The STATE of Ohio, Appellee,

v.

MOORE, Appellant.

[Cite as *State v. Moore* (2000), 140 Ohio App.3d 278.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–990739.

Decided Sept. 29, 2000.

280

*Michael K. Allen,* Hamilton County Prosecuting Attorney, and *Paula E. Adams,* Assistant Prosecuting Attorney, for appellee.

*Elizabeth Agar,* for appellant.

———————

HILDEBRANDT, Presiding Judge.

Defendant-appellant, Belanda Moore, appeals from the judgment of the trial court convicting her of one count of child endangering and one count of involuntary manslaughter. Moore was sentenced to seven years' incarceration for child endangering and to ten years' incarceration for involuntary manslaughter. The trial court ordered the sentences to be served consecutively. Moore raises three assignments of error on appeal. We affirm.

Seven-year-old Jasmine Wilkerson, Moore's daughter, died as a result of injuries inflicted by Moore. According to Moore's testimony at trial, she intended to punish Jasmine by hitting her with a belt because of behavior problems that Jasmine had exhibited at school. Jasmine resisted the punishment by moving away from Moore. Moore then tied Jasmine's arms and legs and continued to hit her with the belt. When Jasmine continued to resist, Moore "stomped"[1] on Jasmine's chest and abdomen five or six times with her foot (she was wearing shoes), allegedly to keep Jasmine from moving away from her. After Moore completed Jasmine's punishment, Jasmine vomited. She continued to vomit throughout the evening and night.

The next afternoon, Moore called 911, claiming that Jasmine had stopped breathing. Moore informed a firefighter/paramedic who responded to the call that she had "whooped" Jasmine the day before and that Jasmine had been vomiting. The paramedic noticed abrasions on Jasmine's chest and abdomen. He also stated that signs of liver mortis and rigor mortis were apparent in Jasmine when she was removed from Moore's apartment, indicating that Jasmine had been dead for hours by the time Moore called for help.

Jasmine was transported to Children's Hospital. Because Jasmine's injuries appeared suspicious, emergency personnel notified the police. Police Officer Lipps was dispatched to the hospital to guard Moore until investigators could arrive. Jasmine was pronounced dead at the hospital. After learning of Jasmine's death, Moore told the physician, in Officer Lipps's presence, the story of what had happened to Jasmine the day before. She told the doctor that one of the times that Jasmine had tried to get away from her, she fell against a table

———————

1. This is the term that Moore used in her taped confession.

and hit her stomach. She also stated that Jasmine had been vomiting but that she thought that Jasmine was faking an illness.

After Jasmine had been pronounced dead, homicide detectives from the Cincinnati Police Department were dispatched to the hospital. One of the officers informed Moore of her *Miranda* rights,[2] and she signed a form indicating that she understood her rights. She also signed a consent form for the detectives to search her apartment. One of the detectives then transported Moore to the police station.

Officers at the station reviewed with Moore the form that she had signed at the hospital indicating that she understood her rights. She repeated that she had been informed of and understood her rights. Officer Couch then interviewed her, and she repeated the story of what she had done to Jasmine the day before.

Testimony by the coroner established that Jasmine had sustained a laceration of her liver caused by a blunt trauma. This injury caused her death.[3] The coroner testified that the injury was consistent with the type of force that would have resulted from Moore's stomping on Jasmine's abdomen and would not have been caused by falling against a table.

Moore was charged with two counts of child endangering, one for inflicting excessive punishment and one for failing to seek medical attention for Jasmine after she became ill. She was also charged with involuntary manslaughter, felonious assault, and murder. Her case was tried to a jury, which found her guilty of child endangering, for inflicting excessive punishment, and of involuntary manslaughter. The jury was unable to reach a verdict on the other three counts.

In her first assignment of error, Moore claims that the trial court erred in overruling her motion to suppress the statements that she made in the presence of Officer Lipps at the hospital and the statements that she made to Officer Couch. She claims that the state failed to prove that she knowingly and voluntarily waived her *Miranda* rights.

■ No one informed Moore of her *Miranda* rights prior to the statements that she made in the presence of Officer Lipps. We agree with the trial court, however, that the statements were not the result of custodial interrogation and were therefore admissible despite the lack of *Miranda* warnings.

---

2. See *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–707.

3. The doctor stated that Jasmine had also sustained injuries to her right kidney and other areas of her abdomen, but these injuries had not caused her death.

■ In *Miranda*, the United States Supreme Court held that when an individual is taken into custody and questioned, procedural safeguards are necessary to protect the constitutional privilege against self-incrimination.[4] When there is no custodial interrogation, the warnings are irrelevant to the admissibility of any statements.[5] Here, the state proved that Officer Lipps was merely present in the room with Moore when Moore made statements about the circumstances surrounding Jasmine's death. Officer Lipps never asked Moore a question.

We reject Moore's claim that Officer Lipps's presence in the room at the moment Moore was informed of her daughter's death was an act or practice "that the police should [have known] [was] likely to evoke an incriminating response from" Moore and was therefore "interrogation" within the meaning of *Miranda.*[6] Interrogation must "reflect a measure of compulsion above and beyond that inherent in custody itself," that is, it must go beyond words or actions "normally attendant to arrest and custody." [7] Officer Lipps's mere presence in the room to monitor Moore until investigators could arrive was an action normally attendant to arrest and custody, and we hold that it was insufficient to constitute "interrogation" requiring *Miranda* warnings.

Additionally, Moore's statements were not the "product of words or actions on the part of the police * * *." [8] Rather, the evidence shows that Moore's statements were made in response to the hospital physician's statement that Jasmine was dead, and that Officer Lipps was merely present at the time but said nothing. Therefore, Officer Lipps's failure to inform Moore of her *Miranda* rights before Moore made her incriminating statements was irrelevant to the admissibility of the statements.

■ Moore also argues that her statements to Officer Couch should have been suppressed because the state failed to prove that she had knowingly and voluntarily waived her rights before making the statements. It is undisputed that Moore did not sign any form or writing indicating that she agreed to waive her *Miranda* rights.

---

4.  See *Miranda, supra,* at 478–479, 86 S.Ct. at 1630, 16 L.Ed.2d at 725–727.

5.  See, *e.g., State v. Tucker* (1998), 81 Ohio St.3d 431, 436, 692 N.E.2d 171, 175; see, also, *Miranda, supra,* at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 725–726.

6.  See *Rhode Island v. Innis* (1980), 446 U.S. 291, 301, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297, 308.

7.  See *id.* at 300–301, 100 S.Ct. at 1689–1690, 64 L.Ed.2d at 307–308.

8.  See *id.* at 303, 100 S.Ct. at 1691, 64 L.Ed.2d at 309.

In *State v. Scott,*[9] at paragraph one of the syllabus, the Supreme Court of Ohio held:

"An express written or oral statement of waiver of the right to remain silent or the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in *Miranda* * * *."

■ Whether a waiver is knowing and voluntary depends on the totality of the circumstances.[10] In *Scott*, FBI agents testified that the defendant read the bureau's "Advice of Rights" form, acknowledged that he understood his rights, agreed to answer questions, and never requested counsel.[11] The Supreme Court of Ohio held that the defendant had knowingly and voluntarily waived his rights, despite the fact that the defendant had been given a waiver-of-rights form and had refused to sign.

Likewise, in *State v. Beam,*[12] the court, citing *Scott*, held that the defendant's indication that he understood the rights that the interrogating officer had read to him and his failure to terminate the officer's interrogation of him showed that the defendant had knowingly and voluntarily waived his *Miranda* rights. The fact that the officer never specifically asked the defendant whether he wished to waive his rights and that the defendant never signed a written waiver did not require a conclusion that the waiver was involuntary.

The evidence presented in this case shows that Moore was informed orally and in writing of her rights and that she indicated orally and in writing that she understood those rights. She stated that she did not want an attorney, and she never indicated an unwillingness to talk to the officers and never attempted to terminate the discussion. Based on *Scott* and *Beam*, we hold that the trial court did not err in holding that Moore knowingly and voluntarily waived her rights. We therefore overrule Moore's first assignment of error.

■■ In her second assignment of error, Moore claims that the trial court erred in overruling her motion for a mistrial predicated on improper remarks made by the prosecutor during cross-examination of Moore. Moore's conviction may be reversed for prosecutorial misconduct only if the remarks of the prosecu-

---

9. (1980), 61 Ohio St.2d 155, 15 O.O.3d 182, 400 N.E.2d 375.

10. See *State v. Dennis* (1997), 79 Ohio St.3d 421, 425, 683 N.E.2d 1096, 1102; *State v. Smith* (1991), 61 Ohio St.3d 284, 288, 574 N.E.2d 510, 515.

11. See *Scott, supra*, at 161, 400 N.E.2d at 380.

12. (1991), 77 Ohio App.3d 200, 203–204, 601 N.E.2d 547, 549.

tor were improper and only if the remarks prejudicially affected Moore's substantial rights.[13]

During direct examination, Moore was asked to explain why she had moved from Detroit to Chicago and then to Cincinnati. She stated, essentially, that she had moved to Cincinnati to make a better life for her children. She stated that, before she left Detroit, Jasmine had been staying with Moore's father, and Moore "found out that he was doing some things to her," so she took Jasmine from her father and brought her to Ohio.

During cross-examination, the prosecutor asked, "Is it not a fact that you came here because there was an investigation going on as to some abuse about Jasmine and you did not want that investigation?" Moore replied, "No, that's not true," and the prosecutor did not make any further inquiry. After the close of all the evidence, Moore's counsel moved for a mistrial, claiming that the state had no factual basis to support its implication that there had been an investigation about abuse of Jasmine or that Moore had come to Cincinnati to avoid that investigation.

The trial court requested that the state provide a basis for the question, and the state produced documents from the Detroit, Michigan department of human services indicating that the department had been investigating the sexual abuse of Jasmine by her paternal grandfather. After determining that the prosecution had a legitimate basis for asking the question, the trial court denied the motion for a mistrial.

■ Moore argues that the question was improper and prejudicial. The state argues that defense counsel opened the door for the inquiry by his question to Moore about her motivation for moving to Cincinnati. We agree that the questions asked during direct examination about the circumstances of Moore's move to Cincinnati and Moore's answers provided a basis for the prosecutor's question. Also, we fail to see the prejudice to Moore from the question, especially since her denial was unchallenged. To the extent that Moore is claiming that the question undermined her defense theory, we note that the state was not obliged to leave unrebutted her depiction of her relationship with Jasmine as that of a normal, concerned, and caring parent. We overrule Moore's second assignment of error.

In her third assignment of error, Moore claims that the trial court erred in failing to impose the minimum sentences for child endangering and involuntary manslaughter and in imposing the maximum sentence for manslaughter.

---

**13.** See *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, 300.

■ Prior to her conviction for the offenses related to Jasmine's death, Moore had no criminal record. R.C. 2929.14(B) states that, in imposing a sentence on an offender who has not previously served a prison term, "the court shall impose the shortest prison term authorized for the offense * * * unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." A trial court may impose a maximum sentence "only upon offenders who [have] committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes," and upon major drug offenders or repeat violent offenders. R.C. 2929.14(C).

The record in this case demonstrates that the trial court found that imposition of the shortest prison term for child endangering and for involuntary manslaughter would demean the seriousness of Moore's conduct and would not adequately protect the public. In reviewing the sentence in this case, this court may modify or vacate the sentence if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law.[14] After reviewing the record in this case, we hold that the record supports the trial court's determination that the shortest prison term would demean the seriousness of the offenses and would not adequately protect the public.

Moore intentionally beat seven-year-old Jasmine with a belt and stomped on her chest and abdomen. She tied Jasmine's hands and feet so that Jasmine would be an easier target for the blows. Although Moore maintained that she had only been trying to spank Jasmine for misbehavior, the record shows that substantially all of the blows fell on Jasmine's abdomen and chest, not on her buttocks. This beating was so severe that Moore caused lacerations in Jasmine's internal organs, causing Jasmine to bleed to death internally. The record amply supports the trial court's determination that the seriousness of this conduct would be demeaned by imposition of the minimum sentences for the offenses.

The record also supports the trial court's determination that imposing the minimum sentences would not adequately protect the public. Moore inflicted the harm upon Jasmine allegedly because of Jasmine's behavior problems at school, which included taking objects that did not belong to her and lying. Moore testified that her son, Marcus, had also exhibited problems at school.[15] Moore also explained that punishing her children with a belt was not unusual for her. The trial court could have reasonably concluded that the minimum sentences for child endangering and involuntary manslaughter would not adequately protect

---

14. R.C. 2953.08(G)(1)(a) and 2953.08(G)(1)(d).

15. Moore's daughter Ariel was still too young at the time of the offenses to have manifested any behavior problems.

Moore's other children. We therefore hold that the trial court did not err in imposing a sentence greater than the statutory minimum for child endangering and for manslaughter.

We also hold that the record supports the trial court's imposition of the maximum sentence for involuntary manslaughter [16] based on its determination that Moore had committed the worst form of the offense. Factors that other courts have considered in deciding whether a defendant committed the worst form of manslaughter include the voluntariness of the act that caused the victim's death,[17] the presence of children when the act was committed,[18] the failure to seek help,[19] and the relationship between the defendant and her victim.[20] Moore purposefully tied up, beat, and stomped on Jasmine, a defenseless child to whom she owed a duty of utmost care. Jasmine's injuries were allowed to fester and worsen for more than twenty hours, even though Moore knew that Jasmine was ill and vomiting. Two other children were present in the home when the injuries were inflicted, and, in fact, Moore instructed her son to assist her in tying Jasmine up so she could inflict punishment.

Moore also claims that taking into account her failure to seek medical aid for Jasmine in effect punished her for a crime of which she had not been convicted. However, all of the facts and circumstances of Jasmine's death were relevant in sentencing Moore for involuntary manslaughter.[21] The court also relied on numerous other factors in making its decision, all of which are supported by the record. We hold that the court did not commit reversible error in finding that Moore had committed the worst form of involuntary manslaughter and in imposing the maximum sentence.

Moore also challenges the imposition of consecutive sentences. A trial court may impose consecutive sentences for multiple offenses if the court finds that consecutive sentences are necessary to protect the public from future crime or to punish the offender, and that consecutive sentences are not disproportionate to

---

16. The court did not impose the maximum term for child endangering.

17. See *State v. Alberty* (Mar. 28, 2000), Allen App. No. 1–99–84, unreported, 2000 WL 327225.

18. See *State v. Thurman* (Aug. 3, 2000), Cuyahoga App. No. 76573, unreported, 2000 WL 1060518.

19. See *id.*

20. See *Alberty, supra; State v. Phipps* (Feb. 25, 1999), Allen App. No. 1–98–69, unreported, 1999 WL 155953.

21. See *Alberty, supra; Thurman, supra; Phipps, supra.* See, also, *State v. Garrard* (1997), 124 Ohio App.3d 718, 707 N.E.2d 546 (circumstances of offense considered in deciding worst form).

the seriousness of the conduct and the danger that the offender poses to the public.[22] The court must also find that the offenses were committed while the offender was awaiting trial or sentencing, that the harm caused was so great or unusual that no single prison term would adequately reflect the seriousness of the conduct, or that, because of the offender's history of criminal conduct, consecutive sentences are necessary to protect the public.[23] Moore claims that the trial court improperly considered a factor outside the sentencing guidelines when it decided to impose consecutive sentences.

The trial court did not fill out the portion of the sentencing sheet identifying its findings for the imposition of consecutive sentences. At the hearing, but before actually setting the terms of the sentences, the court stated, "This sentence is imposed to recognize that an act so irresponsible requires suitable punishment, * * * to adequately protect the public from future crimes by you, * * * and to recognize that no single prison term * * * would adequately reflect the seriousness of your conduct." A sentencing judge may satisfy his or her duty under the sentencing guidelines "with nothing more than a rote recitation that she * * * considered the applicable" factors.[24] In this case, the court's recitation of the findings noted above satisfied the court's duty to make appropriate findings pursuant to R.C. 2929.14(E)(4) for imposition of consecutive sentences.[25] We have reviewed the findings of the court and the record in this case, and we hold that the record supports the trial court's findings.

However, after making the findings noted above, the court then stated, "In order to assist the state in deciding whether or not to retry the defendant for the counts which the jury could not reach a verdict on, this court advised counsel that it acknowledges and will follow the recent decision" in *State v. Rance*,[26] allowing the imposition of consecutive sentences for involuntary manslaughter and for the felony offense underlying the manslaughter charge. The record contains other references to this in-chambers discussion between the court and the parties. The prosecutor referred to the court's indication that it would impose consecutive sentences in his statement to the court that the state would not pursue the charges on which the jury could not agree. He referred again to the in-chambers

---

22. R.C. 2929.14(E)(4).

23. R.C. 2929.14(E)(4)(a) through (c).

24. See *State v. Arnett* (2000), 88 Ohio St.3d 208, 215, 724 N.E.2d 793, 799.

25. See, also, *State v. Edmonson* (1999), 86 Ohio St.3d 324, 326, 715 N.E.2d 131, 134 (sentencing statutes require court to make findings on record for imposition of sentence, but court need not state the reasons for its findings).

26. (1999), 85 Ohio St.3d 632, 710 N.E.2d 699.

discussion in his argument to the court for the imposition of maximum, consecutive sentences for the offenses of which Moore was convicted. The prosecutor also stated that the state was "looking for something that would approach the minimum term for the murder charge, that being fifteen years."

In her final assignment of error, Moore claims that the trial court impermissibly imposed consecutive sentences for the purpose of assisting the state in deciding whether to retry Moore on the murder charge and the other charges. In *State v. Stone*,[27] this court vacated the imposition of consecutive sentences upon a defendant when the trial court erroneously based its decision on the fact that the defendant had failed to appear at his original sentencing hearing. We held that when the trial court's own language indicates that it actually considered an impermissible factor in sentencing, the sentence had to be vacated and the cause remanded for resentencing.

In *Stone*, however, we specifically held that the findings[28] of the trial court, apart from the impermissible one, were insufficient under the statute to support imposition of consecutive sentences. In this case, the trial court made the findings required by the statute but stated an additional, and impermissible, basis for the decision. As stated above, the record indicates that imposition of consecutive sentences was appropriate in this case. Because the appropriate findings of the court, which were supported by the record, support the imposition of consecutive sentences, we hold that the court's reference to the additional basis for its decision was harmless error in this case.

Based on the foregoing, we affirm the judgment of the trial court.

*Judgment affirmed.*

WINKLER, J., concurs.

DOAN, J., dissents in part.

DOAN, Judge, dissenting in part.

I dissent from the decision of the majority because I believe that the trial court's consideration of an impermissible factor in its imposition of consecutive sentences was contrary to law and prejudicial. I would vacate that aspect of the

27. *State v. Stone* (Feb. 26, 1999), Hamilton App. No. C–980382, unreported, 1999 WL 94626.

28. Using the terminology from the Supreme Court of Ohio's *Edmonson* decision, we note that the trial court in *Stone* did not make "findings" (the factors listed in the statute) but rather stated the "reasons" (the specific facts from the case) for its imposition of consecutive sentences.

sentences and remand the cause to the trial court to resentence Moore based solely on the factors set forth in the sentencing guidelines.

R.C. Chapter 2929 provides guidelines for the trial court to use in setting the type and length of the sentence to be imposed for a given offense. Some of the guidelines are more specific than others. For instance, if the court must impose or chooses to impose a prison term upon an offender who has not previously served a prison term, the court *must* impose the minimum term *unless* the court finds that one of two specific conditions exists.[29]

Similarly, a court is permitted to order an offender to serve consecutive prison terms for multiple offenses only if the court finds that "the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public."[30] The court must also find either (a) that the defendant committed the offenses while awaiting trial or sentencing, while under a community residential or nonresidential sanction, or while under post-release control for a prior offense or (b) that "[t]he harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct."[31] It is for those reasons, and those reasons only, that R.C. 2929.14(E)(4) allows the imposition of consecutive sentences.

In this case, the trial court clearly stated on the record that the basis for its imposition of consecutive sentences was its desire to assist the state in determining whether to retry Moore on the charges on which the jury could not agree. This factor is not among those listed as appropriate considerations under R.C. 2929.14(E)(4), and it is not among any of the general considerations in the sentencing guidelines. In other words, it is a totally impermissible factor.

The trial court's own language indicated that the sentence was in fact based on an impermissible factor, notwithstanding its otherwise rote recitation of the statutory language. The sentence was therefore contrary to law. Simply because this court would have upheld the sentence had it been properly imposed does not render the trial court's error harmless. It is our duty to ensure that trial courts impose sentences in accordance with the requirements of R.C. Chapter 2929. That was not done in this case, and I would vacate the consecutive

---

**29.** See R.C. 2929.14(B). See, also, *State v. Edmonson* (1999), 86 Ohio St.3d 324, 328, 715 N.E.2d 131, 134.

**30.** R.C. 2929.14(E)(4).

**31.** *Id.*

sentences and remand for reconsideration of that aspect of the sentence that was based on the permissible factors.