OPINION.
Defendant-appellant, Cedric Daniels, was sentenced to five years' confinement upon his plea of guilty to having a weapon under disability,[1] and to one year's confinement on the attendant gun specification. We affirm those sentences.
 I. The Charge and Plea
Daniels was indicted in January 1999 on seven counts of felonious assault and a single count of having a weapon under disability, each of which carried a gun specification, and on one count of intimidation of a witness or victim. Initially, Daniels pleaded not guilty to all charges. In July 1999, he withdrew that plea after a plea bargain was struck. In exchange for Daniels's guilty plea to having a weapon under disability, with its gun specification, the remaining charges were dismissed.
After conducting the requisite colloquy with Daniels and his trial counsel, the court accepted the guilty plea with the following statement:
 THE COURT: I'll write down on the form 2923.13(A)(2), which is a felony three. And also make a finding of guilty of the firearm Spec. No. 1 to Count 8, and dismiss Counts 1 through 7 and 9 and Specs. 1 through 7 and Count 9 and Spec. No. 2 to Count 8. Same bond. Continue for sentence. Be back here let's see September the 16th.
[TRIAL COUNSEL]: 16th is good.
 THE COURT: Thursday, September 16, at 9 o'clock for sentence. Same bond. We won't do a pre-sentence. It's kind of silly. Just be ready to go. If you show up on the 16th, you get your two years. If you don't show up, you get six years when we find you. So stay out of trouble and show up on time. Okay.
 The court's references to the consequences of Daniels's failure to reappear for sentencing on the agreed date were an extension of its statement at the very beginning of the proceeding in which Daniels had entered his plea:
 [T]here's been an agreed sentence of two years, with the further stipulation that I'm going to put on here a total of two years if he shows up for sentencing, because you want a continuance
THE DEFENDANT: Yeah, I need
THE COURT: — to get your affairs in order?
THE DEFENDANT: Yes.
 THE COURT: The deal is, if you don't show up for sentencing, you don't get the two years.
THE DEFENDANT: I'll be here. I'll be here.
 THE COURT: You can end up with six years. Okay? Five years on the gun, on the firearm spec, and another year on the gun spec. Okay?
THE DEFENDANT: Uh-huh.
 THE COURT: Don't get in any trouble. Stay out of trouble and show up. I don't mind giving you a stay. But if you don't show up, you get six years. So a total of two years if I'm going to write this in, if the defendant shows up for sentence.
* * *
 If you don't show up, all deals are off, and you end up doing because you face on Count No. 8, you face one to five years.
 Now, the deal is, I'm going to give you one year on that, and then the gun spec has to run consecutive. So that's a year. So it's a total of two years.
 Now, if you don't show up, you could serve anywhere normally on a felony three, you could serve anywhere from one, two, three, or four or five years for a weapon under disability, plus a one-year gun spec. If you don't show up, I'm going to give you six years.
 THE DEFENDANT: I'll show up. Two years is a lot better than six.
 THE COURT: That's the deal. Do you understand that? That's my standard deal.
 The case was called as scheduled on September 16, 1999. Daniels's trial counsel was present, but Daniels was not, and counsel advised the court that he had spoken to Daniels the day before, but did not currently know where Daniels was. The court waited for approximately one and one-half hours before deciding to issue a warrant for Daniels. Even then, the court advised counsel, "If you get him in here in the next couple hours, I'll go along with the original plea bargain."
 II. Motion to Withdraw Plea
Almost one year after failing to appear for sentencing, Daniels was re-arrested, and new counsel was appointed to represent him. On November 29, 2000, that attorney was allowed to withdraw, and another trial counsel was appointed. Subsequently, Daniels, pro se, moved the court to order his then third trial counsel to withdraw because, among other things, Daniels felt "uncomfortable" with him. That motion was overruled on January 8, 2001.
On January 5, 2001, Daniels's counsel moved to withdraw Daniels's guilty plea, relying on Crim.R. 32.1, but not specifying the grounds for the motion. That motion was heard on September 8, 2001, at which time this exchange occurred:
 [TRIAL COUNSEL]: Well, as to the motion to withdraw the plea, your Honor, Mr. Daniels indicates to me that there was some question whether he understood the plea at the time.
 Additionally, he indicates to me that since that time there has been a witness who appeared who could probably exonerate him, and as a result of that the witness is a gentleman named Dwonne Neal, who currently is at River City [a local correctional facility].
 And in the interest of justice, we would ask the Court to allow him to withdraw the plea and try the case on the merits, because he thinks he can prevail.
 When invited by the court to speak, Daniels insisted that he had been "coerced into" accepting the plea bargain by his original trial counsel, who had "kn[own] at the time [that Daniels] wasn't in [his] right state of mind," yet had urged him to "think about" his, Daniels's, son when weighing the plea bargain against the ten-year sentence he risked by refusing the bargain and going to trial. The court overruled Daniels's motion to withdraw the plea on the ground that "[i]t [had] all [been] explained to him very clearly."
When Daniels spoke to the trial court in connection with his allegation that he had been coerced into the plea bargain, he said,
 * * * Dwonne Neal, from my understanding, was a victim, told the prosecutor and the officer, the investigating officer on that case, that he got shot breaking trying to stop the altercation. When they asked him outside this courtroom was I the man who shot him, he said no.
 It is significant that Daniels offered nothing more than this passing comment as to the content of what Neal might have contributed that "could probably" have established a defense to the charge of having a weapon under disability," one that stood apart legally from the assault charges, which had been dismissed as part of the earlier plea bargain. It is clear from the record before us that the prosecution had ample evidence to convict Daniels of the weapons charge, and he did not dispute that, either at the time of his original plea or when he was seeking to withdraw the plea.
When ruling upon a motion to withdraw a plea of guilty prior to sentencing, a trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for withdrawal.[2] The decision to grant or deny such a presentence motion is within the court's sound discretion.
If Daniels's first assignment of error is taken as attacking the competency of the counsel who had represented him when the plea bargain was struck, and who allegedly had "coerced" him at that juncture, it fails on that ground. The trial court complied fully with Crim.R.11(C)(2) before accepting the guilty plea. The clarity of the court's expressions and Daniels's responses leaves no doubt that Daniels understood fully what he was doing. Daniels signed the entry journalized July 12, 1999, specifically acknowledging that he understood the court's admonitions, and that he and the prosecution had agreed on a sentence of a "total of two years if [he] show[ed] for sentence." The record leaves no doubt that Daniels's claim that his plea was not intelligent or voluntary, but was coerced, was out of the whole cloth and not worthy of credence. The "new evidence" assertion was pure speculation. Its nature was undefined, and even if Neal had had something to offer, it would have been irrelevant. We are convinced that the court did not abuse its sound discretion in overruling Daniels's motion to withdraw his guilty plea.
 III. Agreed Sentence, or Not.
The second assignment presents a more nettlesome problem, one that has been occurring repeatedly as courts have attempted to satisfy the intricacies of R.C. Chapter 2929. The assignment is that the trial court erred by imposing a sentence that was contrary to law. Daniels argues that the six-year sentence was excessive, did not comply with the guidelines and procedures set forth in R.C. 2929.11 through 2929.14, and was based on factors outside those statutory directives.
The state claims that Daniels is not entitled to appellate review of his sentence. The entry withdrawing Daniels's plea of not guilty and entering his plea of guilty, endorsed by both Daniels and his then counsel, bore the printed notation in bracketed, bold type "Guilty Plea/Agreed Sentence." An agreed sentence is defined in R.C. 2953.08(D), which states, "A sentence imposed upon a defendant is not subject to review * * * if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge."
If Daniels's sentence were indeed an agreed sentence, because the sentence here was within the statutory range, we would look no further — and any further requirements of the sentencing statutes would be irrelevant.[3] But we believe that while the original two-year sentence — if Daniels showed up for sentencing — was an agreed sentence, it fell short of being an agreed sentence of six years if he did not appear.
The agreed sentence entry stated, "Total of two years if defendant shows for sentencing." This notation was initialed by the assistant prosecutor and Daniels; the entry itself was signed by Daniels, his attorney, the assistant prosecutor, and the court. The court also referred to it in its colloquy with Daniels. In that same colloquy, the court made clear to Daniels that if he did not appear at the specified time, the two-year deal was off and Daniels could get six years. But there was no specific agreement on the six-year sentence. It came very close, but we cannot infer an agreement — it must be beyond doubt. If the entry had stated, "[T]wo years if defendant shows for sentencing — six years if he does not," and the court had conducted a colloquy with Daniels stating the agreement in those words, we see no reason why it would not have been a valid agreed sentence. But because the actual agreement did not adequately reflect the six-year hammer, we hold that the six years was not an agreed sentence, and that Daniels's sentence is subject to appellate review.
 IV. Sentence Review
The simple question presented by the six-year sentence meted out to Daniels is whether it complied with the sentencing laws. But the issues of compliance with the intricate, complex, and confusing mandates of those laws are difficult. Here, the five-year sentence for the weapon-under-disability conviction was the maximum.[4] The one-year sentence for the firearm specification was mandatory — and it was consecutive to the five-year term as a matter of law.[5] The only issue, then, is whether the five-year maximum sentence is supported by the record.
Because we apprehend that some confusion exists on the issue whether a defendant's failure to appear in court can be a factor in sentencing — and we admit some of that confusion has been created by this court's prior holdings — we think it necessary to discuss the four previous cases where this or a similar issue has arisen. Though we do not normally use lengthy quotes, it is helpful here.
We begin our analysis with State v. Johnson,[6] in which we vacated that part of a judgment imposing consecutive sentences, while affirming the imposition of maximum sentences. Johnson had been found guilty of three fifth-degree felonies involving thefts of property. The trial court released Johnson on his own recognizance pending sentence, but warned him specifically that if he did not appear for sentencing on the agreed day, the court would sentence him to the maximum prison term. Johnson failed to appear, was arrested on a warrant issued thereafter, and was sentenced to twelve months' incarceration for one offense, to be served consecutively to concurrent terms of imprisonment of twelve months for the two remaining offenses. On appeal, Johnson conceded that the record in his case supported the imposition of maximum sentences and so limited his claim of error to the imposition of consecutive sentences. We affirmed the trial court's decision to impose maximum sentences, but reversed the order making the sentences consecutive.
In State v. Stone,[7] the assignment of error was, as it is here, that the sentences were excessive and did not comply with the sentencing guidelines. We noted that, although Stone had challenged his sentences "in general," he had concentrated his attack on the imposition of consecutive sentences. In Stone, the record showed that the court had not completed a sentencing worksheet, and that it had not, at the sentencing hearing, verbalized its reasons for imposing consecutive sentences. At a subsequent hearing on Stone's motion to reconsider the sentence, the court offered an explanation for its imposition of consecutive sentences, but we determined that the explanation "fell short of the requirements under R.C. 2929.14(E) to impose consecutive sentences." In context with that determination, we "stress[ed] that the [trial] court [had] explained that it had based its sentence, in part, on the fact that Stone had originally failed to appear at his scheduled sentencing hearing." That led us to hold as follows:
 Based on this court's holding in State v. Johnson
— that the current sentencing guidelines do not permit a court to enhance a sentence as a punishment for a defendant's failure to appear for sentencing — we conclude that the court erred by basing its sentence on Stone's failure to appear at his original sentencing hearing.
 Although this court understands the trial court's action, and finds nothing logically objectionable, we must follow the legislative guidelines. Under those guidelines, the sentence here was improper because Stone's failure to appear should not have been factored into the court's decision to impose consecutive sentences or into its decision regarding the length of Stone's sentence in general.
 As the author of Stone, I can say that we went too far, albeit in dicta. Stone's failure to appear could not have been factored legally into the decision on consecutive sentences, but it could have been a consideration in whether to impose maximum sentences. Stone should not be read otherwise. This is because the requirements for consecutive sentences are different from those for maximum sentences. Failure to appear might very well be relevant to recidivism, a proper consideration for maximum sentences; it is not relevant to any factor bearing upon consecutive
sentences.
Some seven months after State v. Stone was decided, this court decidedState v. Beasley.[8] Beasley had been convicted of the fifth-degree felony of possession of cocaine and had been sentenced to the maximum term of one year in prison. In his appeal, Beasley asserted, in a single assignment of error, that the imposition of the maximum term was unsupported by law because the trial court had erroneously relied upon his failure to appear at his initial sentencing hearing.
In Beasley, we first set forth the particulars of R.C. 2929.14(C), which allows the imposition of a maximum prison term when a sentencing court has found that an offender poses the greatest likelihood of recidivism. We then pointed out that the trial court had found, on the basis of Beasley's prior convictions, imprisonment and unsuccessful probation, that he posed the greatest likelihood of recidivism. Along with the specific R.C. 2929.12 recidivism factors that it listed, the trial court included Beasley's failure to appear at his initial sentencing hearing. We concluded that, "[o]bviously, the trial court [had] considered Beasley's failure to appear as an `other relevant factor' relating to the likelihood of recidivism."[9] This observation was followed, in context, by a declaration that "Beasley's reliance on Statev. Stone [was] misplaced" and on the following explanation:
 The trial court in State v. Stone did not use a sentencing worksheet. The trial court's statements at a hearing on a motion to reconsider the sentence that it had imposed demonstrated that it had used the defendant's failure to appear at sentencing as the major justification for imposing consecutive sentences under R.C. 2929.14(E)(4). But R.C. 2929.14(E)(4), by enumerating specific findings that must be made by the trial court, limits what the trial court may consider in imposing consecutive sentences, and failure to appear is not among those factors.
 In contrast, the trial court in this case completed a sentencing worksheet. On the worksheet, the trial court clearly indicated at which point in its analysis that it considered Beasley's failure to appear by a handwritten notation — as one of three factors indicating that Beasley was likely to commit future crimes under R.C. 2929.12(D). The worksheet clearly demonstrates that Beasley's failure to appear at his initial sentencing hearing was not used specifically to impose the maximum term.[10]
 This court again revisited State v. Stone when deciding State v. Moore.[11] Moore had been found guilty of child endangering and involuntary manslaughter, while the jury had been unable to reach a verdict on other counts, principally, felonious assault and murder. She was sentenced to consecutive terms of imprisonment of seven years for child endangering and ten years for involuntary manslaughter.
We rejected Moore's reliance upon State v. Stone to substantiate her claim that the trial court had impermissibly imposed consecutive sentences. After the court had made its findings for the imposition of those penalties, findings that, upon review, we held to have been supported by the record, the court advised counsel that it would followState v. Rance[12] "to assist the state in deciding whether or not to retry [Moore] for the counts [upon] which the jury could not reach a verdict * * * ." The prosecutor interpreted this to mean that the court would impose consecutive sentences so that the state would not pursue the unresolved charges.
Two members of the appellate panel deciding Moore voted to affirm, rejecting Moore's reliance upon State v. Stone as authority for this court to vacate the consecutive sentences:
 In Stone * * * we specifically held that the findings of the trial court, apart from the impermissible one, were insufficient under the statute to support [the] imposition of consecutive sentences. In this case, the trial court made the findings required by the statute but stated an additional, and impermissible, basis for the decision. As stated above, the record indicates that imposition of consecutive sentences was appropriate in this case. Because the appropriate findings of the court, which were supported by the record, support the imposition of consecutive sentences, we hold that the court's reference to the additional basis for its decision was harmless error in this case.[13]
 The third member of the panel, dissenting in part, predicated his dissent upon his "belie[f] that the trial court's consideration of an impermissible factor in its imposition of consecutive sentences was contrary to law and prejudicial," and thereupon declared his preference to "vacate that aspect of the sentences and remand the cause to the trial court to resentence Moore based solely on the factors set forth in the sentencing guidelines." The dissenting opinion then expanded upon this position in its concluding paragraphs:
 In this case, the trial court clearly stated on the record that the basis for its imposition of consecutive
sentences was its desire to assist the state in determining whether to retry Moore on the charges on which the jury could not agree. This factor is not among those listed as appropriate considerations under R.C. 2929.14(E)(4), and it is not among any of the general considerations in the sentencing guidelines. In other words, it is a totally impermissible factor.
 The trial court's own language indicated that the sentence was in fact based on an impermissible factor, notwithstanding its otherwise rote recitation of the statutory language. The sentence was therefore contrary to law. Simply because this court would have upheld the sentence had it been properly imposed does not render the trial court's error harmless. It is our duty to ensure the trial courts impose sentences in accordance with the requirements of R.C. Chapter 2929. That was not done in this case, and I would vacate the consecutive sentences and remand for reconsideration of that aspect of the sentence that was based on the impermissible factors.[14]
 All members of this panel agree with the foregoing statement of law, and were the issue directly presented here, we would overrule Moore. Consecutive sentences based, even in part, on impermissible factors are contrary to law. The Moore case involved consecutive sentences, and we do not have that issue in this case — Daniels received the maximum sentence, not consecutive sentences (except for the consecutive sentence for the firearm specification that was required by law[15]). And Daniels's failure to appear was a relevant factor in assessing his likelihood of recidivism.
In this case, the sentencing court did complete a sentencing worksheet. In compliance with R.C. 2929.12(D), the court first noted Daniels's "prior delinquency or convictions" as a factor in its decision and then facially complied with R.C. 2929.14(C) by finding that Daniels had "committed the worst form of the offense" and "[p]ose[d] the greatest likelihood of recidivism."
The record also includes the court's verbalization of its purposes in sentencing Daniels. This followed the assistant prosecutor's recitation of Daniels's past criminal activities, including robbery, for which he was incarcerated in 1982; obstruction of justice in 1983; criminal trespass, felonious assault, and aggravated robbery, for which he was sentenced to twenty-five years' confinement in 1984; and "trafficking as a felony," for which he "went to the penitentiary" in 1996. Daniels, through his counsel, indicated "that when he [had been] put on probation or parole he [had] successfully completed it."
The court's finding that Daniels had committed the worst form of the offense is not supported by the record. It is impossible to believe that the trial court was willing to give Daniels two years' incarceration for the worst form of an offense. The best that the state had to offer by way of proof in this respect was the statement of a police officer, which the court accepted as true, that Daniels had admitted that, at the time of the September 5 incident, he had possessed a "gun" and had fired it into the air at the scene of a dice game. If the imposition of the maximum sentence had been based solely upon a finding that Daniels had committed the worst form of the offense of possessing a weapon while under disability — what is the "worst form" of possessing something? — we might well have found it impossible to affirm the sentence.
The requirements within R.C. 2929.14(C) are disjunctive. Accordingly, a sentencing court need find only one of them to be demonstrated by the evidence before imposing a maximum sentence.
While the "worst form" finding is unsupportable, the trial court also found a proper component of R.C. 2929.14(C): that Daniels posed the greatest likelihood of recidivism. To arrive at that finding, the fact that Daniels had not appeared for sentencing as agreed was a proper factor to consider.[16] Therefore, we elect to treat the finding of "worst form" to be, upon the facts of this case, harmless error, i.e., merely an improvident conclusion that did not prejudice Daniels. If Daniels posed the greatest likelihood of recidivism — a conclusion that is difficult to quarrel with in view of his lengthy record and the facts that he had failed to appear for sentencing, had missed his original arraignment, and had been a fugitive for a year — then he was eligible for the maximum sentence regardless of the severity of the offense.
The record convinces us that the five-year sentence meted out to Daniels for the offense of having a weapon under disability was within the statutory bounds and supported by the record, and that the one-year sentence for the accompanying specification was mandatory.[17]
We affirm the trial court's judgment.
Judgment affirmed.
Shannon, J., concurs in judgment only.
Doan, P.J., dissents.
Raymond E. Shannon, retired from the First Appellate District, sitting by assignment.
[1] R.C. 2923.13(A)(2).
[2] See State v. Xie (1992), 62 Ohio St.3d 521, 584 N.E.2d 715;State v. Fish (1995), 104 Ohio App.3d 236, 661 N.E.2d 788.
[3] See R.C. 2925.08(D); State v. Salsgiver (Aug. 10, 2001), Trumbull App. No. 2000-T-0048, unreported; State v. Presta (Sept. 18, 2000), Warren App. No. CA2000-02-014, unreported.
[4] R.C. 2929.14(A)(3).
[5] R.C. 2929.14(D)(1)(a)(iii).
[6] (Oct. 23, 1998), Hamilton App. Nos. C-980013 and C-980014, unreported.
[7] (Feb. 26, 1999), Hamilton App. No. C-980382, unreported.
[8] (1999), 134 Ohio App.3d 694, 731 N.E.2d 1223.
[9] Id. at 696, 731 N.E.2d at 1224.
[10] Id. at 696-697, 731 N.E.2d at 1225.
[11] (2000), 140 Ohio App.3d 278, 747 N.E.2d 281.
[12] (1999), 85 Ohio St.3d 632, 710 N.E.2d 699.
[13] Id. at 289, 747 N.E.2d at 290.
[14] Id. at 290-291, 747 N.E.2d at 291 (Doan, J., dissenting).
[15] R.C. 2929.14(E)(1)(a).
[16] Beasley, supra.
[17] R.C. 2929.14(D)(1)(a)(iii).