OPINION
Appellant, Daniel J. Baldwin ("Baldwin"), appeals from the judgment of the Ashtabula County Court of Common Pleas entered on September 13, 1999, in which the maximum sentence was imposed on each of two felonies, with the sentences to be served consecutively. The following facts are relevant to a determination of this appeal.
On August 5, 1998, Baldwin was indicted on four counts of aggravated rape with life imprisonment specifications, and one count of rape, all felonies of the first degree. The offenses allegedly occurred between June 1, 1995, and March 15, 1997. Baldwin initially pled not guilty. On April 9, 1999, Baldwin withdrew his not guilty plea and, pursuant to a plea bargain, entered a plea of guilty to charges of two lesser-included offenses. Baldwin pled in accordance with North Carolina v. Alford
(1970), 400 U.S. 25, which permits a defendant to plead to an offense in order to avoid the more serious penalties that might be imposed after a loss at trial, while still not actually admitting guilt.
Under the terms of the plea bargain, count four, aggravated rape, a pre-Senate Bill 2 offense, was amended to gross sexual imposition in violation of R.C. 2907.05(A)(4), a third degree felony carrying a maximum prison term of two years. Count five, rape, a post-Senate Bill 2 offense, was amended to sexual battery in violation of R.C. 2907.03(A)(5), a third degree felony carrying a maximum prison term of five years. The remaining counts in the indictment were dismissed.
The victim of all the offenses was Baldwin's biological daughter. The victim was less than thirteen years old at the time the offenses allegedly occurred. She was fifteen years old at the time the plea agreement was entered. The state indicated at the plea hearing that the reason the charges were reduced so dramatically in the plea agreement was solely to spare the victim further pain, and the mental and emotional impact of going through a trial. The trial court accepted the plea and ordered a pre-sentence investigation. A sexual predator evaluation was done by the Forensic Psychiatric Center of Northeast Ohio, Inc.
The two reports revealed allegations Baldwin sexually abused his brothers and sisters when they were young. Specifically, both of his brothers alleged Baldwin raped them when they were children. One brother alleged he saw Baldwin having intercourse with his sister. His other sister alleged Baldwin molested her from when she was four until she was six years old. Baldwin's daughter alleged the sexual abuse of her began in 1987, when she was four, and continued into March of 1997. She alleged Baldwin first had intercourse with her when she was in third grade.
Baldwin denies committing any of the alleged offenses, and also denied all of the allegations of his brothers and his sister. The psychiatric evaluation concluded that Baldwin fell into several categories indicating a high risk of recidivism. In particular, sexual attraction to children was noted as the highest predictor of recidivism.
At the sentencing hearing on September 10, 1999, the trial court stated it was fashioning a sentence that was sufficient to protect the public from future crime, to punish Baldwin for his offenses, and not demean the conduct and its impact on the victim. The court found that the victim suffered devastating psychological and mental injuries which were exacerbated by her very young age, that the victim suffered physical injuries as well, that she was the daughter of Baldwin, and that the abuse continued over a long period of time. The court found Baldwin's relationship with the victim facilitated the offense. The court also found Baldwin had a prior felony conviction (1978), a recent conviction for domestic violence, three convictions for public intoxication, and a DUI conviction. The court concluded he was not amenable to community control sanctions. Finally, the court noted that there was a "long standing history of sexual abuse of this child."
The trial court found that the facts demonstrated the worst form of the offense, and that Baldwin posed the greatest likelihood of committing future offenses. The court concluded consecutive sentences were necessary to punish Baldwin and to adequately protect the public from future crimes. The court found consecutive sentences were not disproportionate to the seriousness of the conduct. The court concluded a single term would not reflect the seriousness of the conduct, rather, a single term would be demeaning to the conduct and its impact on the victim. In fact, the court stated: "I am limited by the terms of the plea negotiation which I think is almost miraculous that your attorney was able to get such a favorable deal for you in this particular case."
For gross sexual imposition in violation of R.C. 2907.05(A)(4), the court sentenced Baldwin to the maximum prison term of two years. For sexual battery in violation of R.C. 2907.03(A)(5), the court sentenced Baldwin to the maximum prison term of five years, with the sentences to be served consecutively. From this judgment, Baldwin timely filed his notice of appeal, assigning the following errors:
 "[1]. The trial court erred to the prejudice of the appellant when it sentenced the appellant to the maximum term of two years for the offense of Gross Sexual Imposition and the maximum sentence of five years for the offense of Sexual Battery with the sentences to run consecutively.
 "[2]. The trial court erred to the prejudice of the appellant by allowing hearsay testimony evidence to be admitted at the sentencing hearing."
 As the gross sexual imposition violation was a pre-Senate Bill 2 offense, this court's evaluation of the propriety of the sentence imposed must employ the pre-Senate Bill 2 standard of review. Under this standard, when the sentence imposed is within the statutory guidelines, the reviewing court will not alter the trial court's exercise of its sentencing discretion unless the appellant is able to establish that the trial court abused that discretion. See Toledo v. Reasonover (1965), 5 Ohio St.2d 22; State v. Bell (1994), 97 Ohio App.3d 576, 584; State v. Gephart (May 5, 1995), Geauga App. No. 94-G-1861, unreported; State v. Conroy (Dec. 17, 1993), Geauga App. No. 92-G-1735, unreported.
"The judge's exercise of discretion in sentencing an offender is not a matter of whim or fancy. It involves a conscientious effort to evaluate all aggravating and mitigating factors before selecting from legislatively authorized choices. By avoiding that process, the judge fails to exercise the allotted discretion." Cleveland v. Egeland
(1986), 26 Ohio App.3d 83, 90. A failure to weigh the statutory criteria and guidelines is considered an abuse or failure to exercise the required judicial discretion. Columbus v. Jones (1987), 39 Ohio App.3d 87, 89. It is a mandatory requirement for a trial court to observe these considerations prior to sentencing a convicted felon. State v. Diehl
(Sept. 29, 1980), Clark App. No. 1444, unreported, 1980 Ohio App. LEXIS 9923.
The court is presumed, in the absence of a showing to the contrary, to have considered the appropriate factors pursuant to R.C. 2929.12.Columbus, supra at 88-89. Thus, Baldwin must demonstrate that the trial court failed to apply the statutory criteria and guidelines in reaching its sentence in his case. Additionally, a predicate determination must be made, prior to a reversal for re-sentencing, that the respective sentence was overly harsh and inappropriate. State v. Conroy (Dec. 17, 1993), Geauga App. No. 92-G-1735, unreported, at 5.
Baldwin argues that the court applied post-Senate Bill 2 law in determining both sentences, whereas it should have applied pre-Senate Bill 2 law in determining the sentence on the gross sexual imposition charge. Baldwin also argues he should have been sentenced according to the factors enumerated in R.C. 2929.13, as opposed to R.C. 2929.12. The mitigating factors in R.C. 2929.13 duplicate the mitigating factors in R.C. 2929.12, excluding the first factor of R.C. 2929.12. However, the factors in R.C. 2929.13 tending to indicate a longer sentence is appropriate apply to public officials and professionals, and thus are not appropriate to Baldwin. Therefore, in this case, R.C. 2929.12 was the appropriate section to apply.
The trial court indicated in its judgment entry that it applied sections R.C 2929.11, R.C.2929.12, R.C.2929.13, and R.C.2929.14 in determining the sentences.
As it existed prior to Senate Bill 2, R.C. 2929.12 stated as follows:
 "(A) In determining the minimum term of imprisonment to be imposed for a felony for which an indefinite term of imprisonment is imposed, the court shall consider the risk that the offender will commit another crime and the need for protecting the public from the risk; the nature and circumstances of the offense; the victim impact statement prepared pursuant to section 2947.051 [2947.05.1] of the Revised Code, if a victim impact statement is required by that section; any statement by the victim pursuant to section 2930.14 of the Revised Code; and the history, character, and condition of the offender and his need for correctional or rehabilitative treatment.
 "(B) The following do not control the court's discretion, but shall be considered in favor of imposing a longer term of imprisonment for a felony for which an indefinite term of imprisonment is imposed:
 "(1) The offender is a repeat or dangerous offender;
 "(2) Regardless of whether the offender knew the age of the victim, the victim of the offense was * * * less than eighteen years of age at the time of the commission of the offense;
 "(3) The victim of the offense has suffered severe social, psychological, physical, or economic injury as a result of the offense.
 "(C) The following do not control the court's discretion, but shall be considered in favor of imposing a shorter minimum term of imprisonment for a felony for which an indefinite term of imprisonment is imposed:
 "(1) The offense neither caused nor threatened serious physical harm to persons or property, or the offender did not contemplate that it would do so;
 "(2) The offense was the result of circumstances unlikely to recur;
 "(3) The victim of the offense induced or facilitated it;
 "(4) There are substantial grounds tending to excuse or justify the offense, though failing to establish a defense;
"(5) The offender acted under strong provocation;
 "(6) The offender has no history of prior delinquency or criminal activity, or has led a law-abiding life for a substantial time before commission of the present offense;
 "(7) The offender is likely to respond quickly to correctional or rehabilitative treatment.
 "(D) The criteria listed in divisions (B) and (C) of this section do not limit the matters that may be considered in determining the minimum term of imprisonment to be imposed for a felony for which an indefinite term of imprisonment is imposed."
 It is evident from the record, the reports, and the transcript of the sentencing hearing that the trial court did not abuse its discretion in determining a sentence for Baldwin's gross sexual imposition offense. The court found that Baldwin is a repeat offender, that his daughter was less than thirteen years old at the time the offense was committed, and that she suffered severe psychological injury as a result of the offense. None of the mitigating factors in subsection (C) weigh in Baldwin's favor. Nor is the sentence contrary to law. Baldwin pled to an offense which carried a maximum sentence of two years. He was sentenced to two years for that offense. Baldwin's assignment of error with respect to the sentence imposed for gross sexual imposition is without merit.
As Baldwin's conviction for sexual battery was a post-Senate Bill 2 offense, our review must be in accordance with R.C. 2953.08. In relevant part, R.C. 2953.08(G)(1) provides that a reviewing court may increase, reduce, or otherwise modify a felony sentence, or may remand the matter to the trial court for re-sentencing if it finds by clear and convincing evidence one of the following: "(a) [t]hat the record does not support the sentence; * * *; or (d), [t]hat the sentence is otherwise contrary to law."
Pursuant to R.C. 2953.08(F), our review of the record shall include any presentence, psychiatric, or other investigative report submitted to the court in writing prior to the imposition of sentence, and any oral or written statements made to or by the court at the sentencing hearing. Accordingly, we have reviewed the documents in the record, including the presentence report and the psychiatric evaluation, and the transcript of the sentencing hearing.
Under post-Senate Bill 2 law, R.C. 2929.14(C) limits the discretion of courts to impose a maximum sentence. State v. Edmonson (1999),86 Ohio St.3d 324, 328. It may only be imposed on defendants who fall into one of the four following categories: (1) those who committed the worst form of the offense; (2) those who pose the greatest likelihood of committing future crimes; (3) certain major drug offenders; and (4) certain repeat violent offenders. Only one of the four criteria of R.C.2929.14(C) need be met to impose the maximum sentence.
In accordance with R.C. 2929.19(B)(2)(d), a court must state for the record its reasons for imposing the maximum sentence. Edmonson at 328. In the instant case, the court stated findings with respect to both the first and second categories set forth in R.C.2929.14(C), and imposed the maximum sentence.
To determine whether an offender committed the worst form of an offense, the trial court should consider the totality of the circumstances. State v. Garrard (1997), 124 Ohio App.3d 718. R.C. 2929.12
provides a non-exclusive list of factors to consider in determining whether the defendant committed the worst form of the offense, and also whether the defendant is likely to be a repeat offender. The court stated three factors set forth in R.C. 2929.12(B) indicating the offense was more serious than conduct normally constituting the offense were present. These findings have been previously recited. All of the court's conclusions were supported by the record. Baldwin did not commit a garden variety sexual battery, he committed sexual battery against his own daughter when she was less than thirteen years old.
With respect to the court's finding that Baldwin poses the greatest likelihood of committing future crimes, the court found that Baldwin had a history of criminal convictions, which are indicative of a likelihood to recidivate. Although the court did not indicate any of the other recidivism factors enumerated in R.C. 2929.12(D), our review of the record pursuant to R.C. 2953.08(F) indicates ample evidence to support the conclusion that Baldwin poses the greatest likelihood of committing future crimes. Specifically, the evaluation done by the Forensic Psychiatric Center of Northeast Ohio, Inc. found Baldwin fell into several of the high risk of recidivism categories. Also, not only did Baldwin allegedly abuse his daughter for ten years, but there were allegations he was committing such acts against his siblings extending back in his own childhood. Also, Baldwin has not shown any genuine remorse for his acts, rather, he continues to deny having committed any sexually abusive acts. All the factors that support the court's conclusion do not bear enumerating. We find that the record does support the imposition of the maximum sentence for Baldwin's sexual battery offense, and that he was sentenced in accordance with law.
The last issue Baldwin raises within his first assignment of error is the propriety of the imposition of consecutive sentences. A court's discretion to impose consecutive sentences is governed by R.C.2929.14(E)(4), which states:
 "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 In order to comply with these sentencing provisions, this court has held that "the record must contain some indication, by use of specific operative facts, that the court considered the statutory factors in its determination." State v. Kase (Sept. 25, 1998), Ashtabula App. No. 97-A-0083, unreported, 4; See, also, State v. Wantz (Dec. 29, 2000), Geauga App. No. 99-G-2216, unreported. A sentence which merely repeats the statutory language "without any idicia of a consideration of the factors set forth would be insufficient." Id. Thus, while appellate review would begin by looking to the judgment entry, it would also include any findings the trial court made on the record at a sentencing hearing. In this case, while the judgment entry merely repeats the statutory language, when orally addressing the issue of consecutive sentences elsewhere in the entry and in the transcript of the sentencing hearing, the trial court identified specific operative facts that meet the statutory criteria and justify the sentence.
Among other factors, the trial court found the victim of the sexual abuse was Baldwin's biological daughter, she was extremely young, the abuse continued over a period of years, and that the consequences were "devastating" to the child. The court found Baldwin had numerous convictions related to alcohol intoxication, a domestic violence offense, and a felony offense. The court also noted that Baldwin's siblings had alleged that he sexually abused them when they were children. Therefore, the court determined consecutive sentences were necessary to protect the public and to underscore the seriousness of the offense committed. Consequently, we must conclude that the trial court did meet its statutory obligations to impose consecutive sentences. Baldwin's first assignment of error is without merit.
In Baldwin's second assignment of error, he contends the trial court erred by allowing hearsay evidence to be admitted at the sentencing hearing in violation of Evid. R. 801(C). Baldwin only objects to one statement made by his sister, Sandra Ritchey, who testified for the prosecution during the sentencing hearing. Ms. Ritchey was the victim's aunt and guardian. The victim chose not to testify at the sentencing hearing. Ms. Ritchey testified that "[the victim] don't want daddy to get away with it."
First, we must note that Evid.R. 101(C) specifically states that the Ohio Rules of Evidence do not apply in certain criminal proceedings, including sentencing hearings. State v. Cook (1988), 83 Ohio St.3d 404,425; Columbus v. Bickel (1991), 77 Ohio App.3d 26, 36; State v Nagle
(June 16, 2000), Lake App. No. 99-L-089, unreported, at 6; State v.Stockdale (Sept. 26, 1997), Lake App. No. 96-L-172, unreported, at 5. However, Baldwin argues this particular hearsay statement could be excluded on the grounds it "bears no indicia of reliability." This is a dubious argument in light of the fact the victim sufficiently participated in the prosecution to ensure Baldwin's conviction. Furthermore, since the victim did not appear at the sentencing hearing because the situation was too emotionally traumatic, Ms. Ritchey, as her guardian, was an appropriate person to make a statement to the court on her behalf. Baldwin's second assignment of error is without merit. The judgment of the trial court is affirmed.
 _____________________________ JUDGE WILLIAM M. O'NEILL
FORD, P.J., CHRISTLEY, J., concur.