DECISION AND JUDGMENT ENTRY
{¶ 1} Dennis Noland appeals the Washington County Common Pleas Court's orders that denied his motion to withdraw his guilty plea, sentenced him to the maximum sentence, and labeled him a sexual predator. In addition, Noland asserts that he received ineffective assistance of counsel. Noland contends the court should have granted his pre-sentence motion to withdraw his guilty plea because he did not understand the consequences of pleading guilty and he is innocent of the charge. We find that the court did not abuse its discretion when it denied Noland's motion because the change of plea hearing indicates that Noland entered the plea knowingly and voluntarily. Noland contends the court erred in imposing the maximum sentence for his rape conviction. He argues that the court is required to explain its reasons for imposing maximum sentences at the sentencing hearing as well as in the sentencing entry. He also argues that the evidence did not support the trial court's findings that he committed the worst form of the offense and poses the greatest likelihood of committing future crimes. We conclude that the court is not required to articulate its reasons for imposing maximum sentences both at the sentencing hearing and in the journal entry because the court speaks through its journal entry. In addition, we conclude that there is sufficient evidence to support the court's finding that Noland committed the worst form of the offense. Noland also contends the trial court erred in labeling him a sexual predator because the state failed to prove that he is likely to commit a future sexually oriented offense. We conclude that there is competent, credible evidence in the record to support Noland's sexual predator label. Finally, Noland contends he received ineffective assistance of counsel because his defense counsel failed to object when the trial court imposed the maximum sentence and labeled Noland a sexual predator. We conclude that Noland did not receive ineffective assistance of counsel because Noland cannot demonstrate that his defense counsel's failure to object resulted in a deficient performance of counsel's duty in light of our conclusion that his sentence and sexual predator label were proper.
 {¶ 2} In November 1997, Tamara Noland discovered that her daughter, Polli Metcalf, was pregnant. Ms. Metcalf, who was twenty-two years old at the time, has the mental capacity of a three and a half year old child. Ms. Metcalf had an abortion and tissue from the fetus was preserved for investigative purposes.
 {¶ 3} After learning her daughter was pregnant, Mrs. Noland contacted the Washington County Sheriff's Office to report that her daughter had been sexually abused. For two years, Detective Schuck attempted to identify the person who had sexually abused Ms. Metcalf. Eventually, Detective Schuck identified Noland, Ms. Metcalf's stepfather, as a suspect based on a call he received from Ms. Metcalf's caregiver. The caregiver indicated that she and Ms. Metcalf were at a movie that contained a passionate scene. The caregiver asked Ms. Metcalf if anybody had ever embraced her or kissed her like that, to which Ms. Metcalf replied "Dad." When the caregiver asked who "Dad" was, Ms. Metcalf identified Noland. Based on that information, Detective Schuck obtained a search warrant for a sample of Noland's DNA. Detective Schuck sent Noland's DNA sample to the laboratory so that it could be compared with the DNA from the fetal tissue. The results indicated that Noland fathered Ms. Metcalf's child. Detective Schuck then interviewed Noland. Initially, Noland denied having sexual intercourse with Ms. Metcalf. Later, he admitted that he had sexual intercourse with Ms. Metcalf on one occasion but stated that he did not mean to impregnate her.
 {¶ 4} In August 2000, the state charged Noland with one count of rape in violation of R.C. 2907.02(A)(1)(c). Although Noland initially pled not guilty, he later changed his plea to guilty. The judge then set the matter for a combined sentencing and sexual predator classification hearing. On the eve of sentencing, Noland filed a motion to withdraw his guilty plea. After holding a hearing on Noland's motion, the judge denied Noland's motion to withdraw his plea. The judge then proceeded to sentence Noland to ten years in prison, the maximum sentence allowed. He also designated Noland a sexual predator. Noland appeals the court's decisions, raising the following assignments of error: "ASSIGNMENT ORERROR NO. 1 — The trial court erred, in violation of Crim. R. 32.1, when it denied Dennis Noland's motion to withdraw his guilty plea thereby denying him due process and the right to a jury trial as guaranteed by the Fifth, Sixth, andFourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.ASSIGNMENT OF ERROR NO. 2 — The trial court erred in sentencing Dennis Noland to a maximum prison term thereby denying him due process as required by the Fifth andFourteenth Amendments to the United States Constitution
and Article I, Section 16 of the Ohio Constitution.ASSIGNMENT OF ERROR NO. 3 — Dennis Noland's due process rights were violated when the court labeled him a sexual predator, in the absence of clear and convincing evidence to support that label.Fourteenth Amendment, United States Constitution; Section 16, Article I, Ohio Constitution; R.C. 2950.09(B)(3). ASSIGNMENT OF ERROR NO. 4 — Dennis Noland was denied his constitutional right to effective assistance of counsel under the Sixth andFourteenth Amendments to the United States Constitution
and Article I, Sections 10 and 16 of the Ohio Constitution when his attorney failed to object to the trial court's improper sentence and improper sexual predator label."
 {¶ 5} In his first assignment of error, Noland contends the trial court erred in denying his pre-sentence motion to withdraw his guilty plea. He argues that he felt coerced into entering his plea and did not understand what pleading guilty meant. Moreover, he argues that he is innocent of the charge to which he pled guilty. Noland claims that he was set up.
 {¶ 6} Under Crim. R. 32.1, a defendant may file a motion to withdraw his guilty plea prior to sentencing. While a pre-sentence motion to withdraw a guilty plea should be freely and liberally granted, a defendant does not have an absolute right to withdraw a plea prior to sentencing. State v. Xie (1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715;State v. Ausman, Ross App. No. 00CA2550, 2000-Ohio-1953. The trial court must hold a hearing on the motion to determine whether the defendant has a reasonable and legitimate basis for the withdrawal of his plea. Xie
at paragraph one of the syllabus.
 {¶ 7} The determination of whether to grant a motion to withdraw a guilty plea is left to the sound discretion of the court. Id.
at paragraph two of the syllabus. A trial court's decision on a motion to withdraw a guilty plea will not be reversed unless the trial court has abused its discretion. Id. at 528; Ausman, supra. An abuse of discretion consists of more than error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary.State v. Lessin, 67 Ohio St.3d 487, 494, 1993-Ohio-52, 620 N.E.2d 72. When applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. In re JaneDoe 1 (1991), 57 Ohio St.3d 135, 137-38, 566 N.E.2d 1181, citing Berk v.Matthews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.
 {¶ 8} Noland's first argument in support of his motion consisted of his claim that he did not understand the proceedings and what it meant to enter a guilty plea. He indicated that he felt coerced into entering a guilty plea. However, Noland failed to explain why he felt coerced into pleading guilty.
 {¶ 9} At the time Noland entered his guilty plea, the court engaged in a Crim. R. 11 hearing. At the hearing, Noland indicated that he understood the nature of the charge against him, the elements of the offense, and the possible penalties. He also indicated that he understood the constitutional rights that he would be giving up by pleading guilty. Twice during the hearing, Noland indicated that his plea was voluntarily entered and not the result of coercion. After the court finished questioning Noland, it asked him if there was anything about the proceedings he had not understood and Noland indicated that there was not. Moreover, after Noland entered his guilty plea and the state articulated the factual basis for the plea, the court offered Noland the opportunity to withdraw his guilty plea. At that time, Noland reaffirmed his desire to plead guilty.
 {¶ 10} In addition to conducting a Crim. R. 11 hearing when Noland entered his plea, the court afforded Noland a full hearing on his motion to withdraw his guilty plea. The court allowed Noland an opportunity to present his arguments in support of the motion. After hearing arguments from both parties, the court denied Noland's pre-sentence motion to withdraw his guilty plea.
 {¶ 11} Given the thorough Crim. R. 11 hearing conducted by the trial court, the court did not abuse its discretion by failing to find a reasonable and legitimate basis for the withdrawal of Noland's guilty plea.
 {¶ 12} Noland's second argument in support of his motion consisted of his claim of innocence. Noland claimed that he was innocent of the charges and that he had been set up.
 {¶ 13} At the change of plea hearing, the state articulated the factual basis for the rape charge against Noland. The court then engaged in the following discussion with Noland: "COURT: Okay. Mr. Noland, did you hear what Attorney Spahr said? NOLAND: Yes. COURT: And is that the truth? NOLAND: Yes. COURT: So you did have sex with this woman? NOLAND: Yes. COURT: Yes? NOLAND: Yes."
At no time during the change of plea hearing did Noland profess his innocence. Instead, he admitted to having sexual intercourse with Ms. Metcalf. Not until two months later, on the eve of sentencing, did Noland file his motion to withdraw his guilty plea, claiming that he was innocent. At the motion hearing, Noland claimed that he did not have sexual intercourse with Ms. Metcalf and that he was being set up. However, Noland presented only his assertion that he was innocent; he offered no testimony or evidence to support this assertion. Given Noland's eve of sentencing, unsupported assertion of innocence, the trial court did not abuse its discretion by failing to find a reasonable and legitimate basis for the withdrawal of Noland's guilty plea.
 {¶ 14} Noland was represented by competent counsel when he entered his guilty plea. At the change of plea hearing, the trial court engaged in a thorough Crim. R. 11 hearing to ensure that Noland understood the nature and consequences of his plea. In addition, the trial court afforded Noland a full hearing on his motion to withdraw his guilty plea. Having reviewed the record, we cannot say the trial court abused its discretion when it denied Noland's pre-sentence motion to withdraw his guilty plea. Accordingly, Noland's first assignment of error is overruled.
 {¶ 15} In his second assignment of error, Noland contends the trial court erred in sentencing him to ten years imprisonment, the maximum sentence permitted for rape. He argues that the trial court's sentence is improper because the court did not articulate the statutorily required findings and reasons at the sentencing hearing. In addition, he argues that the evidence does not support the trial court's findings that he committed the worst form of the offense and posed the greatest likelihood of committing future crimes.
 {¶ 16} A defendant has an appeal of right when the court imposes a maximum prison term for one offense, unless the maximum prison term is statutorily mandated. R.C. 2953.08(A)(1)(a). A defendant also has an appeal of right where the sentence is contrary to law. R.C. 2953.08(A)(4). We may not reverse a sentence unless we find by clear and convincing evidence that the sentence is not supported by the record or that it is contrary to law. R.C. 2953.08(G)(2); See, also, State v. Holsinger (Nov. 20, 1998), Pike App. No. 97CA605. In this context, we do not substitute our judgment for that of the trial court nor do we simply defer to its discretion. State v. Keerps, Washington App. No. 02CA2, 2002-Ohio-4806. Rather, we will look to the record to determine whether the sentencing court: 1) considered the statutory factors; 2) made the required findings; 3) relied on substantial evidence in the record to support those findings; and 4) properly applied the statutory guidelines. SeeState v. Dunwoody (Aug. 5, 1998), Meigs App. No. 97CA11, citing Griffin Katz, Ohio Felony Sentencing Law (1998 Ed.), Section 9.16.
 {¶ 17} When the trial court elects or is required to impose a prison term on an offender who has not previously served a prison term, the shortest authorized prison term is presumed to be appropriate. R.C. 2929.14(B). However, the trial court may impose a longer sentence if it finds that the shortest prison term will either (1) demean the seriousness of the offender's conduct, or (2) not adequately protect the public from future crime. Id. The trial court need not give specific reasons for finding that the shortest prison term is inappropriate, as long as it notes on the record that it engaged in the analysis required under R.C. 2929.14(B) and that it varied from the shortest sentence for at least one of the two sanctioned reasons. State v. Martin,140 Ohio App.3d 326, 335, 2000-Ohio-1942, 747 N.E.2d 318.
 {¶ 18} R.C. 2929.14(C) limits a trial court's authority to impose the maximum prison sentence. Under R.C. 2929.14(C), maximum sentences are reserved for those offenders who (1) have committed the worst forms of the offense; (2) pose the greatest likelihood of committing future crimes; (3) certain major drug offenders; and (4) certain repeat violent offenders. If the trial court imposes the maximum sentence, it must not only make one of the required findings but also give its reasons for doing so. R.C. 2929.19(B)(2)(d).
 {¶ 19} In his first argument under this assignment of error, Noland contends the trial court erred in not explaining its reasons for imposing maximum sentences at the sentencing hearing. This court has never required the trial court to expressly state its findings and reasons at the sentencing hearing, and we decline to do so now.[1] SeeState v. Littlefield, Washington App. No. 02CA19, 2003-Ohio-863, at ¶ 11; State v. Keerps, Washington App. No. 02CA2, 2002-Ohio-4806, at ¶ 21. Because a court speaks through its journal entry, it need only articulate its findings and reasons in the sentencing entry.Littlefield. If, however, the sentencing entry does not contain the required findings and reasons, we will consult the transcript of the sentencing hearing to ensure that the trial court complied with the felony sentencing guidelines. See Keerps; State v. Johnson, Washington App. No. 01CA5, 2002-Ohio-2576, fn. 9. The trial court is not required to articulate its findings and reasons both in the sentencing entry and at the sentencing hearing. Thus, Noland's argument has no merit.
 {¶ 20} In his second argument under this assignment of error, Noland contends the evidence is inadequate to support the trial court's finding that he committed the worst form of the offense and posed the greatest likelihood of committing future crimes.
 {¶ 21} In its sentencing entry, the trial court expressly stated that "imposing the minimum sentence would not be adequate to protect the public nor to punish the offender." The court then went on to impose the maximum sentence, finding that Noland had committed the worst form of the offense. In giving its reasons for that finding, the trial court stated: "[T]he Defendant raped his mentally retarded stepdaughter, impregnating her and forcing the family to choose to abort the child. The harm caused by the Defendant in this case was great and unusual. The letter provided to the Court by the victim's mother has extensively detailed the emotional and physical impact of the crime on the victim and the victim's mother." Earlier in its sentencing entry, the trial court considered the R.C. 2929.12(B) factors, which indicate that an offender's conduct is more serious than conduct normally constituting the offense. The court found that (1) the injury to the victim was made worse her mental condition and her developmental age; (2) the crime caused serious physical and emotional harm to the victim and her family; and (3) the Defendant's relationship to the victim facilitated the offense. The court also found an absence of R.C. 2929.12(C) factors indicating that the offender's conduct was less serious than conduct normally constituting the offense.
 {¶ 22} As we recognized in State v. Johnson, Washington App. No. 01CA5, 2002-Ohio-2576, fn. 6, there may be more than one "worst form of the offense." "[T]he trial court is not required to compare [a defendant's] conduct to some hypothetical absolute worst form of the offense in reaching its determination." Id. When determining whether a defendant committed the worst form of the offense, a trial court must consider the totality of the circumstances. State v. Coleman, Meigs App. No. 00CA010, 2001-Ohio-2436, citing State v. Garrad (1997),124 Ohio App.3d 718, 722, 707 N.E.2d 546.
 {¶ 23} Noland contends the trial court cannot consider Ms. Metcalf's mental capacity when determining whether he committed the worst form of the offense since her mental capacity is an element of the offense. Noland pled guilty to the charge of rape in violation of R.C. 2907.02(A)(1)(c). R.C. 2907.02(A)(1)(c) prohibits a person from engaging in sexual conduct with another when "the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *."
 {¶ 24} A review of the record shows that the trial court did not rely solely on Ms. Metcalf's mental capacity in determining that Noland committed the worst form of the offense. The court considered the fact that Noland's relationship as Ms. Metcalf's stepfather facilitated the offense. The court also emphasized the great and unusual harm Ms. Metcalf and her family suffered as a result of the rape. See, State v. Coleman, Meigs App. No. 00CA010, 2001-Ohio-2436 (evidence of the victims' psychological and economic harm held sufficient to support the trial court's finding that defendant committed the worst form of vandalism). At the sentencing hearing, the court read an excerpt from a letter Mrs. Noland had written regarding the effect of Noland's actions. The letter stated: "I have always believed abortion was the same as murder. But when my daughter's mental and physical health were at stake, I felt that I had no choice. I live with the image of a very tiny, stillborn baby, laying on a table, and know that I brought about the death of my granddaughter. I can still see and hear my confused and scared child, as she laid hooked up to the monitor and her panic, when hard labor and delivery started. These memories will never go away. The damage done in this case will go on forever. * * * I believed my home to be the most secure place for my children or any others. It never entered my mind that * * * this could happen in my home."
 {¶ 25} Noland also seems to argue that the trial court cannot find that he committed the worst form of the offense unless it makes findings with respect to each of the factors listed in R.C. 2929.12(B). While the factors in R.C. 2929.12(B) provide guidance to a trial court in its determination of whether a defendant committed the worst form of the offense, they are not the only factors the court should consider. Statev. Stanley (Nov. 18, 1998), Meigs App. No. 97CA21, citing State v. Coyle
(Oct. 13, 1997), Clermont App. No. CA97-02-014. As stated above, the trial court must consider the totality of the circumstances when determining whether a defendant committed the worst form of the offense.Coleman, supra. Moreover, a trial court is generally not required to make specific findings on the record to show that it considered the factors set forth in R.C. 2929.12. State v. Arnett, 88 Ohio St.3d 208, 215,2000-Ohio-302, 724 N.E.2d 793. However, it must be remembered that when a trial court imposes the maximum sentence it must "make a finding that gives its reasons" for imposing that sentence. R.C. 2929.19(B)(2)(d). It naturally follows that if any of the R.C. 2929.12 factors are the basis for the trial court's finding that the maximum sentence is appropriate, then those factors must be explained. Because the trial court is not required to make specific findings regarding each of the R.C. 2929.12
factors before imposing the maximum sentence, Noland's argument fails.
 {¶ 26} The trial court's finding that Noland committed the worst form of the offense is supported by sufficient evidence. In order to impose the maximum sentence, the trial court need only find that a defendant fits into one of the four classifications set forth in R.C. 2929.14(C). State v. Rich, Pickaway App. Nos. 00CA46, 00CA47, 2001-Ohio-2613. Because we find that there is sufficient evidence to support the trial court's finding that Noland committed one of the worst forms of the offense, we need not address whether there is sufficient evidence to support the trial court's finding that Noland posed the greatest likelihood of committing future crime. Noland has failed to establish by clear and convincing evidence that his sentence is not supported by the record or is contrary to law. Accordingly, his second assignment of error is overruled.
 {¶ 27} In his third assignment of error, Noland argues that the trial court erred in labeling him a sexual predator. Noland contends the state failed to prove by clear and convincing evidence that he is likely to engage in future sexually oriented offenses.
 {¶ 28} A sexual predator is a person who has been convicted of, or pled guilty to, committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. R.C. 2950.01(E); State v. Eppinger, 91 Ohio St.3d 158, 163, 2001-Ohio-247,743 N.E.2d 881. Before a court may adjudicate an offender as a sexual predator, it must find each of the these elements established by clear and convincing evidence. R.C. 2950.09(B)(3). "Clear and convincing evidence" is evidence that will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. SeeCincinnati Bar Assn. V. Massengale (1991), 58 Ohio St.3d 121, 122,568 N.E.2d 1222; In re Meyer (1994), 98 Ohio App.3d 189, 195,648 N.E.2d 52. It is considered a higher degree of proof than a mere "preponderance of the evidence," the standard generally utilized in civil cases; however, it is less stringent than the "beyond a reasonable doubt" standard used in criminal trials. See State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54, quoting Cross v. Ledford (1954),161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.
 {¶ 29} When reviewing whether "clear and convincing evidence" supports the trial court's decision, we must examine the record and ascertain whether enough evidence exists to meet this burden of proof. See In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368,481 N.E.2d 613. This type of review is deferential to the trial court. We will not overturn a trial court's judgment as being against the manifest weight of the evidence if the record contains competent, credible evidence to support it. Schiebel, supra; Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273; C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.
 {¶ 30} Because Noland pled guilty to rape, he meets the first prong of the "sexual predator" definition. Noland, however, challenges the trial court's finding that he is likely to commit a future sexually oriented offense, the second prong of the "sexual predator" definition.
 {¶ 31} When determining whether an offender should be classified as a sexual predator, a court must consider all relevant factors, including those listed in R.C. 2950.09(B)(2). Eppinger,91 Ohio St.3d at 164. A trial court should discuss on the record the particular evidence and factors upon which it relies to support its decision that recidivism is likely. Id. at 166-67. However, a trial court is not required to express its reasoning or make explicit findings on all criteria listed in the statute. It need only consider and address the relevant factors. The R.C. 2950.09(B)(2) factors are: "(a)the offender's age; (b) the offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses; (c) the age of the victim of the sexually oriented offense for which sentence is to be imposed; (d) whether the sexually oriented offense for which sentence is to be imposed involved multiple victims; (e) whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting; (f) if the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders; (g) any mental illness or mental disability of the offender; (h) the nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse; (i) whether the offender, during the commission of the sexually oriented offense displayed cruelty or made one or more threats of cruelty; (j) any additional behavioral characteristics that contribute to the offender's conduct."
 {¶ 32} A court is under no obligation to "tally up" the R.C. 2950.09(B)(2) factors in any particular fashion. State v. Mollohan (Aug. 19, 1999), Washington App. No. 98CA13. A court may classify an offender as a "sexual predator" even if only one or two statutory factors are present, so long as the totality of the relevant circumstances provides clear and convincing evidence that the offender is likely to commit a future sexually oriented offense. Id. A trial court may properly designate an offender a sexual predator even in the absence of expert testimony. See Eppinger, 91 Ohio St.3d at 162-63 (while appointment of an expert is not mandatory, the court shall provide an indigent defendant with an expert "if the court determines, within its sound discretion, that such services are reasonably necessary.")
 {¶ 33} Before addressing whether there is competent, credible evidence to support the trial court's sexual predator classification, we must first address a preliminary issue. Noland contends the trial court's discussion at the sexual offender classification hearing failed to adequately support the court's finding that he should be labeled a sexual predator. He argues that the trial court did not indicate the reasons behind its finding that Noland is likely to commit a future sexually oriented offense.
 {¶ 34} In Eppinger, 91 Ohio St.3d at 166, the Ohio Supreme Court set forth the components of a model sexual offender classification hearing. In a model sexual offender classification hearing the trial court "should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism." Id. (Emphasis added). However, neither Eppinger nor R.C. Chapter 2950 requires the court to discuss on the record the evidence and factors that it relied upon. State v. Garrie, Washington App. No. 01CA21, 2002-Ohio-5788, at ¶ 33. While we urge the trial courts in our district to conduct all sexual offender classification hearings in accordance with the model sexual offender classification hearing discussed in Eppinger, supra, we find that the trial court did not err in failing to discuss at the hearing the factors and evidence it relied upon in determining recidivism.
 {¶ 35} In its journal entry, the trial court discussed each of the statutory factors, indicating whether they applied to Noland. The court found that Noland was 40 years of age when he committed the offense. The court noted that Noland had a prior conviction for aggravated menacing, but had no prior sexual offense convictions. The court found that the victim, although twenty-two at the time of the offense, had the mental capacity of a three and a half year old child. The court went on to find that Noland's offense did not involve multiple victims, Noland did not use drugs or alcohol to impair the victim, Noland did not have a mental illness or disability, there was no demonstrated pattern of abuse, and Noland did not display acts of cruelty. The court then addressed other factors it considered relevant to determining if Noland was likely to commit a future sexually-oriented offense. The court noted that the victim is mentally retarded, Noland was the victim's stepfather, and Noland shows no remorse for his actions. The court also noted that Noland's natural daughter "reported to the Washington County Sheriff's Office that [Noland] had sexually abused her when she was under 18 years of age, although such report was never made to law enforcement at the time of the abuse."
 {¶ 36} The factors in R.C. 2950.09(B)(2) are designed to assist the trial court in its determination of whether an offender is likely to commit one or more future sexual offenses. State v. Meade (Aug. 30, 1999), Scioto App. No. 98CA2566.; State v. Dunn (June 17, 1998), Pickaway App. No. 97CA26. If the enumerated factors indicate that an offender is likely to commit a future sexual offense, a trial court may designate even a first time offender a sexual predator. Meade; Dunn. Noland was 40 years old at the time he committed this offense; old enough to know that having sexual intercourse with his mentally retarded stepdaughter is not appropriate. Although this is his first conviction for a sexual offense, Noland does have a prior criminal conviction. Moreover, Noland's natural daughter has reported to the Washington County Sheriff's Office that Noland sexually abused her on at least four different occasions, beginning when she was fifteen. Despite pleading guilty to rape and admitting to having sexual intercourse with Ms. Metcalf, Noland later claimed that he did not have sexual intercourse with Ms. Metcalf and that he is being set up. Thus, Noland refuses to take responsibility for his actions. We conclude that the trial court did not err when it found by clear and convincing evidence that Noland is likely to commit a future sexually-oriented offense. Accordingly, Noland's third assignment of error is overruled.
 {¶ 37} In his fourth assignment of error, Noland contends he received ineffective assistance of counsel. Noland argues that his trial counsel was ineffective because counsel failed to object the trial court's "improper" imposition of the maximum sentence and the trial court's "improper" sexual predator label. Noland argues that there is a reasonable probability that counsel's objections would have changed the outcome of both his sentence and his sexual predator label. Noland also argues that the standard of review on appeal would have been more favorable had his attorney objected to the sentence and sexual offender classification. He argues that because his counsel did not object we are required to review the merits of his appeal under a plain error analysis rather than the de novo review we would have engaged in if his counsel objected.
 {¶ 38} Reversal of a conviction for ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient, and second, that the deficient performance prejudiced the defense. State v. Smith, 89 Ohio St.3d 323, 327,2000-Ohio-166, 731 N.E.2d 645, citing Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley
(1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373. Defense counsel's representation must fall below an objective standard of reasonableness to be deficient in terms of ineffective assistance. Bradley, supra. Moreover, the defendant must show that there exists a reasonable probability that, were it not for counsel's errors, the results of the trial would have been different. State v. White, 82 Ohio St.3d 16, 23,1998-Ohio-363, 693 N.E.2d 772. If one component of the Strickland test disposes of an ineffective assistance of counsel claim, it is not necessary to address both components. Strickland; Bradley.
 {¶ 39} In light of our resolution of Noland's second and third assignments of error, we find that any objections on trial counsel's part would have been meritless and thus, futile. Trial counsel is not required to make futile or meritless objections. See State v. Mitchell (1988),53 Ohio App.3d 117, 119, 559 N.E.2d 1370; State v. Ledford (Jan. 24, 2000), Warren App. No. CA99-05-014. Therefore, there is no evidence to support Noland's contention that his trial counsel's performance was deficient. Accordingly, Noland's fourth assignment of error is overruled.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. Kline, J.: Concur in Judgment and Opinion.
[1] The issue of whether the trial court must state its findings and reasons for imposing the maximum sentence at the sentencing hearing is currently pending before the Supreme Court of Ohio in State v. Newman, Summit App. No. 20981, 2002-Ohio-4250. See State v. Newman,97 Ohio St.3d 1480, 2002-Ohio-6866, 780 N.E.2d 285 (Table).