DECISION AND JUDGMENT ENTRY
{¶ 1} Roger Ward, Jr. appeals the trial court's imposition of the maximum sentence for his robbery conviction. He contends that the record does not support the court's finding that he committed one of the worst forms of the offense. We reject that contention because Ward specifically targeted the victim, who was suffering from cancer, and stole her medication from her hand, knocking her to the ground and causing her intravenous tube to dislodge from her arm. Moreover, he stole drugs which were illegal for him to possess, use or distribute. Therefore, there is substantial evidence in the record to support the trial court's finding that Ward committed one of the worst forms of robbery.
 {¶ 2} Relying on Blakely v. Washington (2004), 542 U.S. ___,159 L.Ed.2d 403, 124 S.Ct. 2531, Ward also argues that the court erred in basing its sentencing decision on facts which he did not admit to be true and a jury did not find. Because we have already held that Blakely is inapplicable to the Ohio sentencing structure, we reject Ward's argument. See State v. Hardie, Washington App. No. 04CA24, 2004-Ohio-7277. Accordingly, we affirm the trial court's judgment.
 {¶ 3} In April 2004, Ward pled guilty to one count of robbery in violation of R.C. 2911.02(A)(3), a third degree felony, in the Washington County Court of Common Pleas. In exchange for his plea, the State of Ohio dismissed another unrelated robbery charge, a second degree felony. The trial court ultimately sentenced Ward to five years imprisonment, the maximum sentence.
 {¶ 4} Ward timely appealed his sentence, assigning the following errors: "I. The trial court erred by imposing a maximum sentence in the absence of facts or reasons to support a finding that Mr. Ward had committed the worst form of the offense. II. The trial court erred by sentencing Mr. Ward to a non-minimum, maximum prison sentence based on facts not found by the jury or admitted by Mr. Ward."
 {¶ 5} A defendant has an appeal as of right when the court imposes the maximum prison term for one offense, unless the term is statutorily mandated. R.C. 2953.08(A)(1)(a). A defendant also has an appeal of right where the sentence is contrary to law. R.C. 2953.08(A)(4). We may not reverse a sentence unless we find by clear and convincing evidence that the sentence is not supported by the record or that it is contrary to law. R.C. 2953.08(G)(2); see, also, State v. Holsinger (Nov. 20, 1998), Pike App. No. 97CA605. In this context, we do not substitute our judgment for that of the trial court nor do we simply defer to its discretion.State v. Keerps, Washington App. No. 02CA2, 2002-Ohio-4806. Rather, we look to the record to determine whether the sentencing court: (1) considered the statutory factors; (2) made the required findings; (3) relied on substantial evidence in the record to support those findings; and (4) properly applied the statutory guidelines. See State v. Dunwoody
(Aug 5, 1998), Meigs App. No. 97CA11, citing Griffin Katz, Ohio Felony Sentencing Law (1998 Ed.), Section 9.16.
 {¶ 6} R.C. 2929.14(C) limits a trial court's authority to impose the maximum term of imprisonment. Under R.C. 2929.14(C), maximum sentences are reserved for those offenders who: (1) committed the worst forms of the offense; (2) pose the greatest likelihood of committing future crimes; (3) certain major drug offenders; and (4) certain repeat offenders. If the trial court imposes the maximum sentence, it must not only make one of the required findings but also give its reasons for doing so at the sentencing hearing. R.C. 2929.19(B)(2)(d); State v.Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, paragraph two of the syllabus.
 {¶ 7} Here, the trial court found that Ward had committed the worst form of the offense of robbery and made the following factual findings at the sentencing hearing in support of this conclusion: "On October 21, 2003, it was broad daylight, at three in the afternoon, [the victim] was returning to her apartment in Marietta, Ohio. She is a patient at the Strecker Cancer Center, and she had just filled a prescription at Rite Aid for OxyContin to help her get through the reactions to chemotherapy. Mr. Ward had had [sic] a — he and a codefendant parked a car in a wooded cemetery on a hill beyond the apartment. He was waiting on her, in fact, stalking her. He spoke to her, he reached for the Rite Aid bag, grabbed it out of her hand, and he shoved her down. When he shoved her down, her intra — her intravenous tube that was permanently in — into her arm, he jerked that out. It — it got — yeah, he didn't jerk it; I mean, that's not — it — it was knocked out, and caused that apparatus to fall, and he ran into the cemetery, and they drove off with one William Summers in a 1986 Lincoln. She stated that she — when she pulled into the stall in front of her building, she noticed this — this gentleman sitting on the front steps in front of her building. He asked if she knew where a Tammy lived, and a she turned to point, he shoved her down and grabbed the plastic bag out of her left hand. It was — what was taken was several different things; OxyContin, 80 milligrams, 20 tablets; Vicodin, we don't know the milligrams, but approximately 75 tablets; Bellamine and potassium. He then gave one of the OxyContins to a Rhonda Martin. He began distributing those around the community to other people. The officers did get the — did a very thorough job investigation [sic], got shoe prints, tire tracks, and eventually were able to get a search warrant to search the house. So, he wasn't — and he was, in a degree, I believe, also involved in an organized criminal activity, because Rhonda Martin was interviewed, and she was not involved in the planning of the robbery, but she did advise that she would — her story is, she got pills from the victim in this case, and she was selling them to — to a lot of people. She named * * *. I don't know what else I can say, but this is just absolutely a horrible situation. The woman has cancer. Somebody's waiting for her on her doorstep in broad daylight, to steal her — her medicine that she needs. I don't think it gets any worse than this, so those are the reasons for the findings that I've made here today. * * *"
 {¶ 8} In his first assignment of error, Ward argues that the reasons cited by the trial court are inadequate to support its finding that he committed the worst form of the offense. Ward notes that the victim suffered no serious injuries and contends that, despite the court's finding otherwise, there is no evidence that he engaged in any "organized criminal activity."
 {¶ 9} In determining whether an offender committed the "worst form of the offense," the trial court is not required to compare the offender's conduct to some hypothetical absolute worst form of the offense. Statev. Johnson, Washington App. No. 01CA5, 2002-Ohio-2576, at fn. 6. Rather, the trial court must consider the totality of the circumstances. Statev. Coleman, Meigs App. No. 00CA010, 2001-Ohio-2436, citing State v.Garrard (1997), 124 Ohio App.3d 718, 722, 707 N.E.2d 546. Here, the victim was particularly vulnerable given her poor health. Moreover, Ward not only robbed this vulnerable victim, but specifically took her medication. Although there is no evidence that the victim was seriously injured, she fell to the ground and her intravenous tube dislodged from her arm.
 {¶ 10} We agree with Ward that there is minimal, if any, evidence that he was involved in organized crime. Although Rhonda Martin claimed that the victim gave her pills every other week to sell to others, Ms. Martin never indicated that Ward gave Ms. Martin the pills he stole from the victim so she could similarly distribute them.[1] Ward stated that he gave the stolen medication to his co-defendant, William Summers, because he owed Summers money.
 {¶ 11} Even disregarding the court's finding that Ward was involved in organized crime, there is sufficient evidence that Ward committed one of the worst forms of the offense of robbery. He specifically targeted the victim, who had cancer, and stole her medication. Regardless of whether he kept this medication for himself or distributed it to others, its possession and use were illegal. Moreover, he caused at least some physical harm to the victim when she fell to the ground and her intravenous tube dislodged from her arm. Therefore, we conclude that the maximum sentence imposed by the court is supported by substantial evidence in the record. Ward's first assignment of error is overruled.
 {¶ 12} In his second assignment of error, Ward argues that the court erred in relying on facts he did not admit and a jury did not find to be true in sentencing him to the maximum sentence. He cites the recent United States Supreme Court decision in Blakely v. Washington (2004), 542 U.S. ___, 159 L.Ed.2d 403, 124 S.Ct. 2531, in support of his argument.
 {¶ 13} In Blakely, the defendant pled guilty to kidnapping his estranged wife. Under the facts admitted during his plea, the defendant was subject to a maximum sentence of 53 months imprisonment. However, under that State of Washington sentencing scheme the trial court could upwardly depart from the standard sentencing range if it found the defendant acted with deliberate cruelty. The trial court made this finding based on the victim's impact statement and imposed a 90 month sentence of imprisonment on the defendant. The Supreme Court reversed and remanded the case, holding that because the facts supporting the defendant's exceptional sentence were neither admitted by him nor found by a jury, the sentence violated the defendant's Sixth Amendment right to a jury trial.
 {¶ 14} At least one Ohio appellate court has accepted that Blakely
applies to Ohio's sentencing scheme and that minimum sentences must be imposed unless a jury determines the factors necessary to impose a greater than minimum sentence. See, e.g., State v. Quinones, Cuyahoga App. No. 83720, 2004-Ohio-4485; State v. Glass, Cuyahoga App. No. 84035,2004-Ohio-4912; State v. Taylor, Cuyahoga App. No. 83551, 2004-Ohio-4468. However, we have reached a different conclusion and held that Blakely is inapplicable to the Ohio sentencing scheme as it differs significantly from the Washington sentencing structure examined in Blakely. See Statev. Sideris, Athens App. No. 04CA37, 2005-Ohio-1055; State v. Hardie,
Washington App. No. 04CA24, 2004-Ohio-7277; State v. Scheer,158 Ohio App.3d 432, 2004-Ohio-4792, 816 N.E.2d 602.
 {¶ 15} After the parties filed their briefs in this appeal, the United States Supreme Court reaffirmed its Blakely decision in United States v.Booker (2005), 543 U.S. ___, 125 S.Ct. 738. Booker held that the Federal Sentencing Guidelines violate the Sixth Amendment right to a jury trial and thus, are unconstitutional.
 {¶ 16} After reviewing Booker, the First District Court of Appeals reversed its earlier holding that Blakely does not apply to the Ohio sentencing scheme. State v. Bruce, Hamilton App. No. C-040421,2005-Ohio-373. However, the other Ohio courts of appeal that have considered the issue have concluded that Blakely remains inapplicable in Ohio even after Booker. See State v. Trubee, Marion App. No. 9-03-65, 2005-Ohio-552; State v. Abdul-Mumin, Franklin App. No. 04AP-485, 2005-Ohio-522. We have reached the same conclusion. See Sideris, supra (where we affirmed the trial court's judgment sentencing defendant to more than the minimum sentence because trial courts have broad discretion to impose sentences within the statutory range and the necessary sentencing findings are not the type traditionally reserved to a jury). See, also, State v. Wilson, Washington App. No. 04CA18, 2005-Ohio-830. Therefore, for the reasons we specifically discussed in our earlier opinions, we overrule Ward's second assignment of error.
 {¶ 17} Having found both of Ward's assigned errors to be meritless, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. McFarland, J.: Concur in Judgment and Opinion.
[1] The victim stated that Ms. Martin assisted her by picking up her medication from the pharmacy and helping her around the house, and that she suspected Ms. Martin stole some of her medication on various occasions.