DECISION AND JUDGMENT ENTRY
{¶ 1} Lawrence R. Legg appeals the judgment of the Meigs County Court of Common Pleas sentencing him to eighteen months in prison, the maximum term of imprisonment, for his conviction for grand theft of a motor vehicle. Legg contends that the trial court erred by imposing the maximum prison sentence for his offense and by ordering him to serve the sentence consecutive to his sentence for a prior felony conviction in Ross County. Because we find that the trial court considered the required factors, found that Legg posed the greatest likelihood of committing future crimes, and adequately stated its reasons for its findings on the record, we find that the trial court properly imposed a maximum sentence for Legg's offense. However, because R.C. 2929.20(I) contemplates that the court that imposed the original prison sentence is the appropriate court to determine whether the offender should serve the reimposed sentence concurrently with or consecutive to the sentence imposed for the new offense, we find that the trial court improperly ordered Legg to serve his sentences consecutively. Accordingly, we affirm the trial court's judgment in part, reverse it in part, and vacate that portion of the judgment that orders Legg serve his sentence consecutive to any other sentence of imprisonment.
 I. {¶ 2} In November 2004, the Meigs County Grand Jury indicted Legg on one count of grand theft of a motor vehicle in violation of R.C. 2913.02(A), a fourth degree felony; one count of breaking and entering in violation of R.C. 2911.13(A), a fifth degree felony; one count of burglary in violation of R.C. 2911.12(A)(3), a third degree felony; and one count of vandalism in violation of R.C. 2909.05(B)(1)(b), a fifth degree felony.
 {¶ 3} The state alleged that Legg and his co-defendant, Craig Carr, entered the garage of the victim, Wesley Karr, removed his 2003 Ford Excursion from the garage, and damaged the vehicle in the process. Legg entered a general plea of not guilty. The state later dismissed the burglary charge, and the case proceeded to a jury trial on the remaining charges.
 {¶ 4} At trial, Karr testified that at about 1:00 a.m. on November 7, 2004, he noticed a disturbance outside his home. When he looked out the window, he noticed taillights near his mailbox, about 150 yards from his house. Karr grabbed a handgun and proceeded to investigate. When he got to the bottom of his driveway, he realized that it was his own Ford Excursion stuck in the mud at the bottom of his driveway. When he approached the vehicle, Karr found Legg in the driver's seat attempting to free it. Karr ordered Legg out of the vehicle and began to walk him up to the house to call the Sheriff's Department.
 {¶ 5} On the way to the house, Karr heard something. He turned to discover another man in a dark trench coat coming up behind him. Karr told the man to put his hands where he could see them. Karr then walked both men to the house where he detained them until Deputy Donald Mohler arrived. However, when the Deputy pulled into the driveway, the other man fled.
 {¶ 6} Authorities later apprehended Carr at a convenience store near the scene. Carr was arrested and later indicted for these offenses. He pled guilty to vandalism, grand theft of a motor vehicle, and breaking and entering. At Legg's trial, Carr testified that they left a party in Chillicothe, and in their "highly intoxicated" state got lost in Meigs County, where they ran out of gas. Carr testified that Legg remained in the vehicle while he went out in search of gas, and that Legg had no knowledge of his actions. Carr claimed that he took Karr's Ford Expedition so that he could siphon gas for their vehicle, but that when it got stuck in the mud, he asked Legg to help free the vehicle.[1]
 {¶ 7} The jury found Legg guilty of grand theft of a motor vehicle, but acquitted him of the breaking and entering and vandalism charges. At the sentencing hearing, the state informed the trial court of Legg's 2003 conviction and three year sentence for failure to comply in Ross County Case No. 03CR181. In describing the offense for the court, the prosecutor stated: "Basically, my understanding is, Your Honor, and defense can, of course, correct me when I'm wrong, he was pulled over for a possible, just a speed stop, DUI possible stop and he basically fled, ran through multiple stop lights putting numeral (sic) people in harms way and he was subsequently convicted on the 10th of November. He was granted Judicial Release and placed on community control in the summer of '04."
 {¶ 8} Legg's counsel did not object to the prosecutor's summary of the prior conviction and sentence. In fact, counsel indicated that he had spoken with Legg's probation officer in Ross County. Based upon the probation officer's purported recommendation to the Ross County prosecutor that the sentences be served concurrently, he asked that the trial court allow the judge in the Ross County case decide whether the sentences should be served concurrently or consecutively.
 {¶ 9} The trial court ultimately sentenced Legg to eighteen months in prison, the maximum prison sentence for his offense. The court also ordered Legg to serve the sentence consecutive to any other sentence of imprisonment, and specifically consecutive to any sentence imposed in Ross County Common Pleas Court.
 {¶ 10} Legg timely appeals, raising the following assignments of error: "[I.] THE TRIAL COURT SENTENCED THE APPELLANT CONTRARY TO LAW AND THE RECORD BY IMPOSING THE MAXIMUM SENTENCE FOR A SINGLE OFFENSE WITHOUT CONSIDERING ALL REQUIRED FACTORS, BY MAKING FINDINGS NOT SUPPORTED BY THE RECORD, AND BY FAILING TO PROVIDE SPECIFIC FACTUAL REASONS IN SUPPORT OF THE FINDINGS MADE. [II.] THE TRIAL COURT SENTENCED THE APPELLANT CONTRARY TO LAW AND THE RECORD BY ORDERING THAT THE SENTENCE IMPOSED ON APPELLANT FOR A SINGLE OFFENSE RUN CONSECUTIVE TO ANY POTENTIAL SENTENCE FROM ANOTHER COUNTY AND BY ORDERING THE CONSECUTIVE SENTENCE WITHOUT PROVIDING SPECIFIC REASONS IN SUPPORT."
 II. {¶ 11} In his first assignment of error, Legg contends that the trial court erred by imposing the maximum prison sentence. Specifically, Legg contends that the trial court failed to consider all of the statutorily mandated factors in determining whether the maximum sentence was appropriate. Additionally, Legg contends that the record did not support the trial court's findings in support of the maximum sentence, and that the court failed to state specific reasons supporting its findings.
 {¶ 12} R.C. 2953.08(A)(1)(a) provides that a defendant convicted of a felony may appeal his sentence, as of right, if the court has imposed the maximum prison term allowed for his single offense. Additionally, R.C. 2953.08(A)(4) provides that a defendant convicted of a felony may appeal on the ground that his sentence is contrary to law. We may not reverse a sentence unless we clearly and convincingly find that the record does not support the sentence, or that it is contrary to law. R.C. 2953.08(G)(2); see, also, State v. Ward, Washington App. No. 04CA25,2005-Ohio-1580; State v. Holsinger (Nov. 20, 1998), Pike App. No. 97CA605. In reviewing a felony sentence, we do not substitute our judgment for that of the trial court, nor do we simply defer to its discretion. State v. Mustard, Pike App. No. 04CA724,2004-Ohio-4917, at ¶ 19, citing State v. Keerps, Washington App. No. 02CA2, 2002-Ohio-4806. Rather, we look to the record to determine whether the sentencing court: (1) considered the statutory factors; (2) made the required findings; (3) relied on substantial evidence in the record to support those findings; and (4) properly applied the statutory guidelines. Id., citing Statev. Dunwoody (Aug. 5, 1998), Meigs App. No. 97CA11, citing Griffin Katz, Ohio Felony Sentencing Law (1998 Ed.), Section 9.16.
 {¶ 13} R.C. 2929.14(C) only authorizes a trial court to impose the maximum sentence upon: (1) offenders who have committed the worst forms of the offense; (2) offenders who pose the greatest likelihood of committing future crimes; (3) certain major drug offenders; and (4) certain repeat violent offenders. This statute embodies a public policy disfavoring maximum sentences except for the most deserving offenders. Edmonson at 328. The trial court need only find the offender falls into one of the listed criteria in R.C. 2929.14(C) to lawfully impose the maximum sentence for a single offense. Id. See, also, State v.Clark, Franklin App. No. 02AP-1312, 2003-Ohio-4136, at ¶ 14, discretionary appeal not allowed, 100 Ohio St.3d 1509,2003-Ohio-6161. Here, the trial court found that Legg posed the greatest likelihood of committing future crimes and that he committed the worst form of the offense.
 {¶ 14} After finding that the offender satisfies one of the criteria enumerated in R.C. 2929.14(C), the sentencing court must then "make a finding that gives its reasons for selecting the sentence imposed." R.C. 2929.19(B)(2)(d); Edmondson at 328.
 {¶ 15} R.C. 2929.12(D) enumerates the following factors indicating that an offender is likely to commit future crimes: "(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing * * *, or under post-release control * * * for an earlier offense or had been unfavorably terminated from post-release control for a prior offense * * *. (2) The offender previously was adjudicated a delinquent child * * * or the offender has a history of criminal convictions. (3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child * * *, or the offender has not responded favorably to sanctions previously imposed for criminal convictions. (4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse. (5) The offender shows no genuine remorse for the offense."
 {¶ 16} In support of its finding that Legg posed the greatest likelihood of committing future crimes, the court specifically stated that Legg committed the offense while under post-release control. Pursuant to R.C. 2929.12(D)(1), this factor indicates that Legg is likely to commit future crimes. Additionally, the court noted that Legg committed the offense "a very short time" after his prior felony conviction. Although this finding does not mirror the language of R.C. 2929.12(D)(3), it does express the trial court's understanding that Legg did not respond favorably to the sanctions imposed for his earlier offense. We have previously found that a talismanic or verbatim recitation of the statutory language is unnecessary so long as the record clearly indicates that the trial court's determination is proper. Statev. Keerps, Washington App. No. 02CA2, 2002-Ohio-4806, at ¶ 23, citing State v. Martin, 140 Ohio App.3d 326, 334-35, 2000-Ohio-1942.
 {¶ 17} Legg contends that the record does not support the trial court's finding that he committed the offense while under post-release control. Specifically, he argues that the prosecution never introduced any evidence reflecting either his prior conviction or his supervision/community control. Instead, he argues that the court only learned of his prior conviction and his judicial release because of a proffer by the prosecuting attorney. However, we note that neither Legg nor his counsel disputed the prosecutor's statement regarding his prior conviction, sentence, and judicial release at the sentencing hearing, even after the prosecutor invited them to "correct me when I'm wrong." Rather, Legg's counsel stated that he had "spoken with the Defendant's probation officer in Ross County, Patrick Fuel. It is his recommendation to the Prosecuting Attorney of Ross County that any sentence as a result of revocation be served concurrent." Moreover, in his brief, Legg explicitly concedes that he was on post-release control when the crime was committed, and that that fact supports the finding that he is likely to commit future crimes. Accordingly, we find no merit in Legg's argument that the record does not support the trial court's finding that he committed the offense while on post-release control.
 {¶ 18} Although Legg concedes his commission of the offense during his post-release control supports the trial court's finding that he is likely to commit future crimes, he contends that the trial court failed to balance that factor against the factors enumerated in R.C. 2929.12(E) that would weigh against such a finding. Specifically, Legg contends that the trial court failed to consider the following R.C. 2929.12(E) factors that he deems relevant: "(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child[;]" and "(4) The offense was committed under circumstances not likely to recur." Legg argues that his co-defendant testified that Legg had no knowledge of, nor did he have anything to do with, the entry into the garage, the actual theft of the car, or the resulting damage. He claims that the fact the jury believed his co-defendant's testimony should have constituted strong mitigating evidence at his sentencing.
 {¶ 19} Our review of the record reveals that, at the sentencing hearing, the trial court specifically stated, "Quite frankly, I don't believe that you were down here just cause you got lost. I mean, you'd have to be a pretty bad drunk to get lost and end up in Meigs County, Mr. Legg." Thus, the record reflects that the court did consider the circumstances that Legg claims are unlikely to recur, i.e. being drunk, getting lost in the middle of the night, running out of gas, etc. The trial court did not state whether it agreed with Legg's claim that these circumstances are unlikely to recur, but instead indicated that it did not believe the version of events propounded by Legg and his co-defendant. Furthermore, the fact that the jury convicted Legg of grand theft of a motor vehicle indicates that, contrary to Legg's argument, even the jury did not fully believe Carr's account of the events.
 {¶ 20} While the court did not specifically address the absence of evidence that Legg had been previously adjudicated delinquent, and did not explicitly state, on the record, that it had considered all of the relevant R.C. 2929.12 recidivism factors, we believe that the court's analysis satisfactorily demonstrates that it did consider and weigh the relevant factors. Because we find that the trial court considered the required factors, found that Legg posed the greatest likelihood of committing future crimes, and adequately stated its reasons for its findings on the record, we find that the trial court properly imposed a maximum sentence for Legg's offense. Because the court need only find the offender falls into one of the listed criteria in R.C. 2929.14(C), we do not reach Legg's argument that the court failed to adequately support its reasons why Legg's offense constituted the worst form of the offense.
 {¶ 21} In his brief, Legg makes one additional argument that the trial court improperly imposed the maximum sentence for his offense. Specifically, Legg notes that immediately before stating its intention to impose the maximum sentence for the sole offense for which the jury convicted him, the trial court stated, "The Court's of the opinion here that you may have escaped liability for some other acts that you may have been involved in." Thus, Legg implies that the court improperly considered its own opinion of his guilt or innocence on the acquitted charges in determining the length of his sentence. However, even if we assume that Legg's implication is true, in light of our analysis above, we cannot find by clear and convincing evidence that the sentence is not supported by the record or that it is contrary to law. Accordingly, we overrule Legg's first assignment of error.
 III. {¶ 22} In his second assignment of error, Legg contends that the trial court erred in ordering him to serve his sentence consecutive to any other sentence of imprisonment, and specifically consecutive to any sentence imposed by the Ross County Court of Common Pleas. Legg concedes that the trial court made the necessary finding under R.C. 2929.14(E)(4)(c) that "the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." But, Legg contends that the plain language of R.C. 2929.14(E) precludes the imposition of consecutive sentences in his case because he was only convicted of one offense sub judice. Additionally, Legg contends that the trial court failed to identify specific reasons or facts in the record to support its findings under 2929.14(E)(4) with adequate reasons as required by R.C. 2929.19(B)(2)(c).
 {¶ 23} In his brief, Legg urges us to find that R.C.2929.14(E) does not permit the imposition of a sentence for his current offense consecutive with the sentence he received for an earlier, unrelated offense in another county. He claims that the statute only applies when a court is actually sentencing an offender to multiple prison terms for multiple offenses in one proceeding, rather than sentencing an offender to a single prison term for a single offense, where the offender already has an existing sentence for a prior offense. We disagree.
 {¶ 24} The Tenth Appellate District considered a similar argument in State v. Gillman, Franklin App. No. 01AP-662, 2001-Ohio-3968. There, the appellant argued that R.C.2929.14(E)(1), (2), and (3) conspicuously state that a sentence imposed under any of the circumstances enumerated in those subsections must be imposed consecutively to any other prison term previously or subsequently imposed upon the offender, while that requirement is absent from subsection (4), which applies to all other situations involving multiple sentences.[2] Id. Additionally, the appellant argued that the former version of R.C. 2929.41(B)(3), which was amended on July 1, 1996, required a sentence of imprisonment to be served consecutively to any other sentence of imprisonment when it was imposed for a new felony committed by a probationer. Id. In contrast, the appellant noted that the amendment deleted this requirement, and indicated that all sentences must be served concurrently to any other sentence previously imposed in other cases by other courts, except as required by R.C. 2929.14(E). Id.
 {¶ 25} The Gillman court rejected the appellant's arguments, noting that the serious nature of the offenses enumerated in R.C. 2929.14(E)(1)-(3) undoubtedly inspired the legislature to make consecutive sentences mandatory in those circumstances. Id. In contrast, the court noted that R.C.2929.14(E)(4) plainly and unambiguously provides, "[i]f multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively." Id. The court found that "the language of subsection (4) does not require multiple prison terms for multiple offenses to be imposed in the same proceeding or to be based upon the same facts in order for any resulting sentences to be served consecutively." Therefore, "[R.C.] 2929.14(E)(4) gives a trial court the discretion to order a sentence to be served consecutively to any previous or subsequent sentence when the court makes the required findings indicating that the prison terms should be served consecutively."
 {¶ 26} In State v. Griffith, Ross App. No. 00CA2583, 2002-Ohio-6142, we addressed the applicability of R.C. 2929.14(E) where a court sentenced an offender for a single offense committed while the offender was serving a pre-existing prison sentence. There, the offender appealed the trial court's imposition of a prison sentence to run consecutive to his existing prison term, on the ground that the trial court failed to make the requisite findings to support a consecutive sentence under R.C. 2929.14(E)(4)(a)-(c). In contrast, the state argued that R.C. 2929.14(E) did not apply because the trial court was not sentencing the offender on "multiple counts," but was sentencing him on a single charge of felonious assault. Therefore, the state claimed that R.C. 2929.14(E) did not apply, and the trial court was not required to make any findings to support its imposition of a consecutive sentence. Based upon the Tenth District's holding in Gillman, we found that R.C.2929.14(E)(4) applied when a court sentenced an offender for a single offense where the offender was already serving a prior prison sentence.
 {¶ 27} Here, however, Legg was not serving a prison sentence at the time of his offense. The parties do not dispute that the Ross County Court of Common Pleas granted Legg judicial release from his prison sentence before he committed the offense at issue here. Therefore, we must examine the statutory provision pertaining to judicial release to determine whether R.C.2929.14(E) is applicable to the facts of this case.
 {¶ 28} R.C. 2929.20 provides that upon motion, a trial court may reduce an "eligible offender's" stated prison term, i.e., the offender's original prison sentence, through early judicial release. R.C. 2929.20(I) provides, in pertinent part: "If the court grants a motion for judicial release under this section, the court shall order the release of the eligible offender, shall place the eligible offender under an appropriate community control sanction, and under the supervision of the department of probation serving the court, and shall reserve the right to reimpose the sentence that it reduced pursuant to the judicial release if the offender violates the sanction. If the courtreimposes the reduced sentence pursuant to this reserved right,it may do so either concurrently with, or consecutive to, any newsentence imposed upon the eligible offender as a result of theviolation that is a new offense." (Emphasis added.)[3]
 {¶ 29} Thus, in the context of an offense committed by an offender on judicial release, R.C. 2929.20(I) contemplates that the court that imposed the original prison sentence is the appropriate court to determine whether the offender should serve the reimposed sentence concurrently with or consecutive to the sentence imposed for the new offense. It is a well-settled principle of statutory construction that "`when two statutes, one general and the other special, cover the same subject matter, the special provision is to be construed as an exception to the general statute which might otherwise apply.'" State ex rel.Slagle v. Rogers, 103 Ohio St.3d 89, 2004-Ohio-4354, at ¶ 14, quoting State ex rel. Dublin Securities, Inc. v. Ohio Div. ofSecurities (1994), 68 Ohio St.3d 426, 429. R.C. 1.51 codifies this rule, providing: "If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail." We have previously recognized that, "[i]n determining whether R.C. 1.51 applies, we must first ascertain whether the statutes are in irreconcilable conflict." State v. Barcus (1999), 133 Ohio App.3d 409, 417, discretionary appeal not allowed, (1999), 86 Ohio St.3d 1462,715 N.E.2d 566, citing State v. Sufronko (1995),105 Ohio App.3d 504, 506.
 {¶ 30} As applied here, R.C. 2929.20(I) is a specific statute that provides a court reimposing an offender's original prison sentence after revoking his judicial release with the authority and discretion to reimpose the sentence either concurrently with, or consecutive to the sentence imposed as a result of the new offense. In contrast, R.C. 2929.14(E) is a general statute that addresses a sentencing court's authority to order an offender to serve multiple prison terms for multiple offenses consecutively.
 {¶ 31} If R.C. 2929.14(E) were to apply here to permit the trial court to impose its sentence consecutive with any sentence the Ross County Court might reimpose upon its revocation of Legg's judicial release, the application of the statute would irreconcilably conflict with R.C. 2929.20(I). Specifically, the application of R.C. 2929.14(E) would allow the trial court to usurp the authority specifically granted to the Ross County Court of Common Pleas by R.C. 2929.20(I) to determine whether Legg should serve any reimposed sentence consecutive to his sentence for his new offense. Although the General Assembly enacted the applicable version of R.C. 2929.14(E) after the applicable version of R.C. 2929.20(I), it does not appear to have manifested any intention for R.C. 2929.14(E) to prevail over R.C.2929.20(I). Hence, under the facts presented here, we conclude that R.C. 2929.14(E) was not applicable to Legg's sentencing below. Therefore, we find that the trial court's imposition of a consecutive sentence is clearly and convincingly contrary to law. Accordingly, we sustain Legg's second assignment of error and vacate that portion of the trial court's order that Legg serve his sentence for grand theft of a motor vehicle consecutive to any other sentence of imprisonment, and specifically consecutive to any sentence imposed in Ross County Common Pleas Court.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, AND REVERSED IN PART, that the trial court's order imposing consecutive sentences be vacated, and that the parties split the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Meigs County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, P.J.: Concurs in Judgment Only.
Abele, J.: Concurs in Judgment and Opinion.
[1] We note that Karr testified his Ford Expedition was a diesel vehicle.
[2] The version of R.C. 2929.14(E)(1)-(3) in effect at the time Legg committed his offense enumerates circumstances where a court imposes multiple sentences, and one of the sentences is: (1) a mandatory prison term for carrying or using a firearm or body armor during the commission of a felony; (2) for the commission of certain offenses by inmates of a jail, prison, or other residential detention facility; or (3) for the commission of certain offenses involving the theft of a firearm or dangerous ordnance.
[3] Here, at the sentencing hearing the trial court stated that the sentence it imposed should be served "consecutive to any sentence that he has previously been ordered to serve." However, we note that based upon the representation of the parties during the course of that hearing, Legg did not have an existing prison sentence. Instead, the Ross County Court of Common Pleas presumably reduced that sentence pursuant to the judicial release statutes, and could "reimpose" it pursuant to R.C. 2929.20(I) for a violation of the terms of his judicial release.